Argued September 11, 1967, affirmed January 17, 1968

TAYLOR, *Respondent, v.* UNITED STATES
NATIONAL BANK, *Appellant.*

436 P. 2d 256

*Douglas M. Thompson,* Portland, argued the cause
for appellant. With him on the briefs were Mautz,
Souther, Spaulding, Kinsey & Williamson.

*Norman Anderson,* Portland, argued the cause for respondent. On the brief were Reiter, Day & Wall and Anderson & Jacob.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and LUSK, Justices.

LUSK, J.

We are called upon in this case to construe a prenuptial agreement.

Maudie A. Taylor, widow of Henry B. Taylor, deceased, filed a petition in the probate court for an order directing the executor of her late husband's estate to pay to her the sum of $650 per month for a period of one year subsequent to April 29, 1966, to be used for the support of the petitioner and to allow her to continue in possession rent-free of the dwelling of the decedent for a period of one year from his death.

The defendant executor pleaded the prenuptial agreement as a bar and the court, after a hearing, granted the relief sought by the widow except that it ordered the executor to pay her $6,000 as a lump sum instead of monthly payments as prayed for. The executor appeals.

There is little, if any, dispute about the facts. The decedent, commonly known as "Ben" Taylor, was married to the petitioner on December 1, 1954. He was then 70 and she was 62 years of age. He had been married three times previously and she once. He had two children by a prior marriage and she had one child by her prior marriage. All these children had attained their majority.

Ben Taylor was worth approximately one million

dollars at the time of the marriage. Maudie's assets amounted to sixteen thousand dollars. They had known each other for about 25 years and at the time he proposed marriage he told her that he had had trouble with two of his former wives, that they had sued him and he wanted her to sign something.

The prenuptial agreement was prepared by the late Wilber Henderson, Ben's attorney, and signed in his office on the day of the marriage. The widow testified that Mr. Henderson read the agreement to her before she signed it, though she said there were many words in it she did not understand. There is no contention here, however, that the agreement was obtained by overreaching or fraud. The only controversy is about the construction of the agreement.

The marriage lasted until Ben's death on December 8, 1965. He left a will which contained no provision for his widow, except that he bequeathed her the household furniture pursuant to the ante-nuptial agreement.

The body of the agreement, in which Ben Taylor is referred to as first party and his intended wife as second party, reads:

"WHEREAS, the parties hereto contemplate entering into a marriage relation with each other, and First Party is the owner of and is possessed of real and personal property in his own right, and is the father of two children, viz., Harold B. Taylor and Neva Claire Priday, both of whom have attained their majority and possess independent means of support; and that Second Party is the owner of and is possessed of personal property, and is the mother of one son, namely, Melvin S. Campbell, who has attained his majority and has independent means of support; and that it is the desire of the parties hereto that their marriage

shall not in any way change their legal rights, or that of their children and heirs-at-law in or to the property of each of them, except as hereinafter may be specified.

"Now, therefore, in consideration of the premises and the agreements herein contained on the part of the respective parties to be kept and performed, the parties hereto do agree:

"1. First Party will provide during the time they shall live together a home for the two of them, and shall maintain the same, and shall provide for Second Party the ordinary and usual family conveniences and necessities such as clothing and medical attention, etc., all according to the station of life to which they have been accustomed;

"2. First Party agrees that as long as they shall live together the First Party will pay to the Second Party the sum of One Hundred & no/100 ($100.00) Dollars a month, and in addition thereto ten per cent. (10%) of all profits or income he shall have beginning with January 1, 1955, after taxes; however, there is to be excluded from the computation of profits and income any profits or income derived from sale of real property now being consummated by the First Party, and there shall be excluded moneys or recovery on account of the cancellation by the Court of the purchase of Indian allotment land in Curry County, Oregon, and, generally, there is to be excluded any profits or income earned at any time prior to January 1, 1955;

"3. In the event First Party shall die within two (2) years from the date of the marriage, the Second Party shall receive the sum of Five Thousand & no/100 ($5,000.00) Dollars from First Party's estate;

"4. First Party renounces, or disclaims and waives, any claim to any property the Second Party now has or may hereafter acquire with her own funds;

"5. Second Party renounces, or disclaims and waives, any claim to any property the First Party

now has or may hereafter acquire with his own funds.

"6. All household furniture acquired hereafter and used by the parties in their home shall, in the event of the death of either party, become the absolute property of the survivor.

"7. In the event the parties should discontinue living together for any reason whatsoever, all obligations hereunder of the parties one to the other shall absolutely cease and terminate as of such time, and each party hereby specifically waives all claims against the other for any of his or her property whatsoever; and unless otherwise mutually agreed-upon, the household furniture shall be divided equally between the parties;

"8. Second Party agrees that, in consideration of the marriage, in case she survives First Party she will make no claim to any part or share of his real or personal estate of which First Party dies seized other than the sum of Five Thousand & no/100 ($5,000.00) Dollars agreed to be paid to her out of the estate as above provided in the event First Party dies within two (2) years from the date of the marriage; Second Party specifically waives and relinquishes all claim to dower, homestead or widow's award to any part of the personal estate of the First Party, except only said sum of Five Thousand & no/100 ($5,000.00) Dollars, which is to be in full satisfaction and discharge of all her claims as the widow or heir-at-law to the estate of the First Party; in the event First Party survives Second Party, First Party agrees that he will make no claim whatsoever to any property, personal or real, of Second Party, and hereby waives and relinquishes any right thereto;

"9. It is declared to be the intention of the parties hereto that by virtue of the marriage neither one shall have or acquire any right, title or claim in and to the real or personal property of the other, but the estate of each shall descend or vest in his or her heirs-at-law, legatees or devisees as may be

prescribed by his or her Last Will and Testament, or by the law then in force, as though no marriage had taken place between them;

"10. It is understood and agreed that this agreement is entered into by each party with full knowledge on the part of each as to the extent of the probable value of the estate of the other, and it is the desire of the respective parties that their rights to each of the other's estate shall be determined and fixed by this agreement and shall be binding upon their respective heirs and legal representatives."

On April 10, 1962, the prenuptial agreement was modified by an agreement in writing prepared by Mrs. Taylor's attorney. The modification deleted paragraph 2 of the original agreement and substituted therefor the husband's promise to pay his wife the sum of $225 per month as long as they should live together.

The statute providing for the relief sought by the petitioner is ORS 113.070, which reads:

"A widow may remain in the dwelling house of her husband one year after his death without being chargeable with rent therefor, and shall have her reasonable sustenance out of the estate for one year."

The question is whether petitioner waived her rights to benefits under ORS 113.070 by execution of the prenuptial agreement. It is her position, as stated in her brief, that (except as to dower and homestead, which are specifically waived) the agreement intended to do no more than "sever her rights as an heir" and does not affect her right to "sustenance and support during administration of the estate."

In *Moore v. Schermerhorn*, 210 Or 23, 307 P2d

483, 308 P2d 180, 65 ALR 715, we assumed that an agreement in derogation of a spouse's right to homestead and exempt property "must be strictly construed, and a waiver should not be found unless clear and explicit," 210 Or at 33; although, due to special circumstances, some of which are not found in the present case,[①] we considered that there should be in that case no "constructional preference * * * between preserving the statutory rights of the surviving spouse and enforcing the solemn contract of the parties after the death of one of them has rendered it irrevocable * * *." Id.

The rule of strict construction as stated in *Schermerhorn* has ample support in the authorities: *In re Schwarzwalter's Estate,* 47 Wn 2d 119, 286 P2d 699; *Estate of Shapero,* 39 CA2d 144, 102 P2d 569; *Williams v. Schneider,* Mo App, 1 SW2d 230; *Re Estate of Wiedemann,* 228 CA2d 362, 39 Cal Rptr 496, 9 ALR3d 944, 952.; 31 Am Jur 2d 168, Executors and Administrators § 332; Annotation, 9 ALR3d 955, § 5. We approach the construction of the agreement in light of that principle.

The most significant language is to be found in paragraph 8. The preceding paragraphs express the intention of the parties that their marriage shall not change their legal rights, except as thereinafter specified, and state certain provisions to be made by the husband for the wife, including a home for the two of them "during the time they shall live together," and the payment to her of $5,000 should her husband die within two years after the marriage. (As he lived

---

[①] These circumstances were that each of the parties had independent legal advice, each agreed to give up valuable rights in consideration of the other's agreement to do likewise (here $16,000 as against $1,000,000) and each had personal reasons for wanting their property to stay in their respective families.

more than two years thereafter she, of course, did not receive this money.) Each of the parties waives any claim to any interest in the property of the other.

Paragraph 8 deals with the rights of the parties after the death of one of them. The petitioner not only agrees that she will make no claim to any realty or personalty of which the husband shall die seised, other than the sum of $5,000 to be paid to her in case he should die within two years, but she "specifically waives and relinquishes all claim to dower, homestead or widow's award to any part of the personal estate" of her husband except said sum of $5,000, and agrees that such sum shall be "in full satisfaction and discharge of all her claims as the widow or heir-at-law" of her husband.

The instrument concludes with a sweeping declaration as to the "intention" of the parties that neither shall by virtue of the marriage "acquire any right, title or claim" in or to the property of the other, but that such property "shall descend or vest in his or her heirs-at-law, legatees or devisees * * * as though no marriage had taken place between them."

The trial judge construed the language regarding widow's award as meaning a waiver by the wife of any claim to her share of the husband's personal estate under the statutes of descent and distribution. The petitioner does not take exception to this construction, which may be justified in view of the ambiguity of the language, though "award" would seem to be an inappropriate word to use in connection with inheritance, but quite appropriate when speaking of a widow's allowance. Moreover, if the waiver was intended to be limited to the widow's rights under the statutes of descent and distribution, it is not a little strange that the draftsman of the agreement should commence para-

graph 8 by providing that the wife "will make no *claim*" (italics added) to any share in her husband's real or personal estate and later, in the same sentence, should repeat such waiver with regard to the husband's personal estate. However that may be, the sentence does not stop there, but goes on to provide that the sum of $5,000 is to be in full satisfaction of all the wife's "claims as the widow or heir-at-law" to her husband's estate. It is not permissible to ignore this language, but it is the court's duty to examine it and, if possible, ascertain its meaning.

In *Estate of Lufkin*, 131 Cal 291, 293, 63 P 469, the court said:

> "The term 'claim,' in its usual and proper sense, is broad enough to include the statutory claim or right of the widow to an allowance from the estate of the testator, and, where a different intention is not manifested by the context, must be so construed."

To the same effect, see *Estate of Whitney*, 171 Cal 750, 754, 154 P 855; *Estate of Brisacher*, 172 CA2d 392, 400, 342 P2d 384. The *Lufkin* case involved the interpretation of a will by which a testator left to his wife $1,000 "on the payment of which one thousand dollars she relinquish all further claim to my estate." As there was nothing in the will to restrict the meaning of the term "claim," acceptance of the bequest was held to bar the widow from her claim to a "family allowance," as it is called in California.

■ The context of the agreement here does not suggest a restricted interpretation of the term "claim." There is no apparent reason for saying that when the petitioner agreed to make no claim to any part of her husband's real or personal estate except the sum of

$5,000 (in the event that he should die within two years of the marriage) the parties were thinking only of her right to inherit. A contrary intent appears immediately in the language following the specific waiver of dower and homestead where it is agreed that the "said sum of Five Thousand and no/100 ($5,000.00) Dollars" shall be in "full satisfaction * * * of all her claims *as the widow* or heir-at-law." (Italics added.) Had it been the intention to waive the petitioner's claim only as heir the use of that word would have sufficed. She was also giving up her rights as a widow, as distinguished from such rights as heir, and included among those rights are those set out in ORS 113.070.

It might be argued that since petitioner did not receive the money she did not waive the right. But if such an interpretation were adopted it would follow that petitioner has waived no claim whatsoever either as widow or as heir—a clearly untenable position. It would be to make the petitioner's waiver of rights dependent upon her husband's death within the two-year period and her receipt of the stipulated sum. The parties intended no such result. The preamble of the agreement recites that the parties intend that their marriage should in no way change their legal rights or the legal rights of their children and heirs at law in respect to the property of each of them "except as hereinafter may be specified," and paragraph 9 declares that the estate of each party shall descend either in accordance with his or her last will and testament or by the law then in force "as though no marriage had taken place between them." Considering these provisions together with the language of paragraph 8 regarding the sum of $5,000, the only reasonable construction of the latter is that the petitioner waived

all rights to her husband's property either as widow or heir except the sum of $5,000 if her husband should die within two years after the marriage.

■ It may be readily conceded that a waiver of the right to inherit does not involve the loss of the right to the statutory benefits accorded a widow or widower. That was the basis of the decision in *Brown, Adm'r v. Miles et al.*, 193 Or 466, 238 P2d 761, where we held that a widower did not waive his right to a probate homestead, ORS 116.010, by a postnuptial agreement executed in contemplation of divorce, which provided, among other things, that "in the event of the death of either party hereto prior to the granting of the divorce [an event which occurred] * * * the survivor will not claim *as heir* to the property that may be owned by the deceased at the time of death and will waive all claim *as an heir* thereto under the laws of the State of Oregon." (Italics added.) 193 Or at 473. The distinction was pointed out in the *Schermerhorn* case, 210 Or at 35, where we held that a prenuptial agreement much more general in its language than the agreement in this case precluded an award of a probate homestead to the surviving husband.

As stated, the expressed waiver by the petitioner of any claim, not only as heir, but also as widow, evinces an intention to waive her right to a widow's allowance and the right to occupy the dwelling of the parties for a year after her husband's death.

Similar language has been given that effect in several decisions of the California courts, as, for example, "full satisfaction of all her marital claims," *In re Noah*, 73 Cal 583, 15 P 287, 2 Am St Rep 829; "relinquishes all right, as his wife, in law or equity, or by descent," *Wickersham v. Comerford*, 96 Cal 433, 31 P 358; relinquish all claim "as such heir, or as surviving hus-

band or wife, respectively," *Estate of Yoell,* 164 Cal 540, 129 P 999; relinquishes "all rights which, as widow of party of the first part, she might otherwise have," *Estate of Schwartz,* 79 CA2d 308, 179 P2d 868; "the survivor of us shall not have a claim against the estate of the other," *Estate of Brisacher,* supra. Cf. *Estate of Bidigare,* 215 Cal 28, 8 P2d 122, where, in holding that the widow had not waived her right to her family allowance, the court said that the agreement there in question "does not in terms waive or purport to waive any claim as surviving widow, as was the case in *Estate of Yoell* [supra]." 215 Cal at 30.

We have examined with care the cases cited by the petitioner, but feel that it would not be profitable to discuss them in this opinion for, as has been observed, "each agreement must be interpreted with reference to its own peculiar language, read in the light of the surrounding circumstances." *Estate of Schwartz,* supra, 79 CA2d at 311. Our interpretation of the language of the agreement here in question fully accords with the expressed intention of the parties that, except in the particulars specifically provided for, their legal rights with respect to each other's property should not be changed by their marriage, nor should the rights of their children and heirs at law.

We conclude that the circuit court erred in allowing the prayer of the petition.

The petitioner continued to occupy the dwelling after the death of her husband and the executor in its answer asked that the court set the amount of reasonable rent due from her for such use and occupancy. Accordingly, the order of the circuit court is reversed and the cause remanded for the determination of that question. No costs or disbursements will be allowed.