Argued September 18, 1969, affirmed in part; reversed in
part January 15, petition for rehearing denied
February 17, 1970. Reversed by Supreme
Court September 11, 1970
See later volume of Oregon Reports

REILING, *Respondent, v.* REILING, *Appellant.*

463 P. 2d 591

*John L. Schwabe* and *Ridgway K. Foley, Jr.*, Portland, argued the cause for appellant. With them on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

*John A. Bryan*, Salem, argued the cause for respondent. With him on the brief were DeArmond, Sherman & Barber, Salem.

FOLEY, J.

The question raised by this appeal is whether a provision of a purported antenuptial agreement in which the wife waives the right to alimony and support is enforceable where the marriage is terminated by the wife obtaining a divorce from the husband.

Plaintiff-wife and defendant-husband, Oregon residents, were married on November 18, 1960, at Reno, Nevada. Plaintiff was 45 years of age and defendant was 47. This was the second marriage for each. Plaintiff had two adult children by her former marriage and defendant had none. No children were born to this union. Each of the parties had accumulated separate property. The plaintiff's separate property consisted principally of a house and lot in Salem. In addition, she had been receiving a Veterans Administration widow's pension of $50.40 per month, and was also entitled to a real property tax exemption estimated at $15.41 per month, both of which were terminated upon her marriage to the defendant. The defendant owned a 53-acre farm and some personal property. The values of the respective properties are

not clearly reflected in the record but complete disclosure was made by each of the parties as to his separate property at the time of the agreement hereinafter mentioned. Plaintiff was granted a divorce in 1968 after about eight years of marriage and defendant was required by the decree to pay $100 per month for her support and $650 attorney fees. Defendant appeals from that portion of the decree which ordered him to pay the monthly support and attorney fees.

Near the time of the marriage the parties entered into what was labeled and treated by them as an antenuptial agreement. The agreement was dated November 17, 1960, but was actually executed two or three months after the marriage and was based upon the oral agreement of the parties made prior to the marriage. Since the parties have considered it an antenuptial agreement and have not questioned its validity by reason of the time of execution, we treat it as an antenuptial agreement for the purposes of this appeal. Each released all rights he might otherwise obtain in the property of the other by virtue of the impending marriage. Both parties agreed that each should maintain complete control of his separate estate and at the request of the other each agreed to execute any document necessary to facilitate the agreement.

That part of the agreement giving rise to the principal question raised in this appeal is paragraph 4, which reads as follows:

"McAllister [plaintiff] hereby releases and waives any and all rights she might now have or in the future acquire to alimony or other form of support allowance payable by Reiling [defendant] before, upon or after divorce of the parties, whether authorized by statute, any court or otherwise."

By statute in Oregon the court, in cases of divorce, can make such orders in connection with support as may be just and proper under the circumstances, ORS 107.100(1)(c), and the parties to a contract cannot defeat the authority thus expressly conferred upon the court. The marriage relationship and the obligations inherent in it including support cannot be completely controlled by private contract because not only the rights of the parties and their welfare but also to some degree the public welfare is involved. We are not here dealing with cases in which the marital relationship is terminated by death, as in *Moore v. Schermerhorn,* 210 Or 23, 307 P2d 483, 308 P2d 180, 65 ALR2d 715 (1957), and *Taylor v. U. S. National Bank,* 248 Or 538, 436 P2d 256 (1968).

██ Each contract must be examined and interpreted with reference to its own peculiar language, read in the light of the surrounding circumstances. *Taylor v. U. S. National Bank,* supra. Where neither party is in a position of undue disadvantage and they voluntarily enter into an agreement which affects their rights and welfare only, it should be regarded as presumptively valid.

█ Here both parties had been previously married and each was competent and mature. The antenuptial agreement was entered into in good faith, freely, fairly and understandingly. It affected only the rights of the parties to it. The instrument itself was fair and reasonable. It is, therefore, presumptively valid. If it were necessary, under the foregoing principles, to provide for the support of the plaintiff by the defendant, the contract would have to give way to that extent. Here, however, the plaintiff testified that she would be going to work in a short time and while

some support would no doubt be convenient to her, there is no showing of necessity for support. We hold, therefore, that the contract in this instance is valid and enforceable and the circuit court erred in invalidating it. The supplemental decree awarding support to the plaintiff is reversed.

■ The antenuptial agreement does not mention attorney fees. They are provided for by statute and counsel for appellant during oral argument conceded that the allowance of attorney fees was not prevented by the contract. That portion of the supplemental decree of the trial court providing for attorney fees is affirmed. Neither party to recover costs and disbursements in this court.

Affirmed in part, reversed in part.