Argued June 3, reversed September 11, 1970
REILING, *Petitioner, v.* REILING, *Respondent.*

474 P2d 327

*John A. Bryan,* Salem, argued the cause for petitioner. With him on the brief were DeArmond, Sherman & Barber, Salem.

*Ridgway K. Foley, Jr.,* and *John L. Schwabe,* Portland, argued the cause for respondent. With them on the briefs were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before O'CONNELL, Chief Justice, and MCALLISTER, SLOAN, DENECKE, HOLMAN and HOWELL, Justices.

HOLMAN, J.

Wife sued husband for divorce. The trial court granted the wife a divorce and awarded alimony. It

held an antenuptial agreement invalid which provided the wife would receive no alimony upon divorce. Upon appeal, the Court of Appeals set aside the allowance of alimony and held the agreement valid. 1 Or App 571, 463 P2d 591 (1970). This court granted a writ of review.

The sole issue is whether that part of an antenuptial agreement is invalid, because of public policy, which provides that the wife should receive no alimony in case the parties were subsequently divorced. There was no evidence or claim of fraud or unfair advantage surrounding the execution of the agreement. The case is one of first impression in this state.

Authority is almost unanimously to the effect that antenuptial agreements to forego alimony are void because they are contrary to public policy.[1] The rationale is twofold. Some cases say that such agreements encourage divorce because the husband knows that he will not have to support his wife if a divorce ensues, and, therefore, he will not treat her with the consideration with which he otherwise would have treated her. This argument is refuted by some critics who say that, on the other hand, such an agreement is an inducement to the wife to bear with her husband's foibles because she knows she will receive no support in the event of divorce. Such critics contend there is no demonstrable evidence that such an agree-

---

[1] Williams v. Williams, 29 Ariz 538, 243 P 402 (1926); Lindsay v. Lindsay, 163 So2d 336 (Fla App 1964); Watson v. Watson, 37 Ind App 548, 77 NE 355 (1906); Neddo v. Neddo, 56 Kan 507, 44 P 1 (1896); Cohn v. Cohn, 209 Md 470, 121 A2d 704 (1956); Stefonick v. Stefonick, 118 Mont 486, 167 P2d 848, 164 ALR 1211 (1946); Motley v. Motley, 255 NC 190, 120 SE2d 422 (1961); Werlein v. Werlein, 27 Wis2d 237, 133 NW2d 820 (1965); Fricke v. Fricke, 257 Wis 124, 42 NW2d 500 (1950). *Contra*: Hudson v. Hudson, 350 P2d 596 (Okla 1960).

ment promotes divorce. Other cases hold that the state has a paramount interest in the adequate support of its citizens, and, therefore, the husband's duty of support, either before or after divorce, should not be left to private control. This argument has more and more cogency as government increasingly considers itself responsible for the adequate support of its citizens.

A good summary of the permissible scope of antenuptial agreements under the present case law is found in Clark, Law of Domestic Relations 28-29 (1968):

> "So long as it relates solely to the disposition of the property of the spouses on their death, the antenuptial agreement is clearly valid. The problems arise when the agreement purports to govern the duties of the parties on divorce, or when it imposes obligations other than those related to property. It is generally held, for example, that an antenuptial agreement is invalid which provides that the wife accepts a stated sum in full settlement not only of her property rights, but also of her claims for support from her husband. Similar decisions exist respecting agreements made after marriage but before separation, the courts holding that the parties cannot contract with respect to support or alimony unless they have actually separated or at least their separation is imminent. The basis for such decisions is not well articulated in the cases. Some courts condemn this sort of agreement as conducive to divorce, but this is certainly not demonstrable as a general proposition. A particular agreement may give one of the parties a financial motive for seeking divorce, but it will often provide the other party with an equally strong motive for resisting divorce. The real reason for invalidating such antenuptial contracts seems to be that although the provisions may be fair at the

time they are made, they may not be later when the separation or divorce occurs. The wife may thus be left with entirely inadequate support, or the husband with an excessively heavy liability to his wife, which in some cases might make it difficult for him to support his children. Thus, the difficulty of forecasting the parties' circumstances so far in the future has led the courts to disallow antenuptial contracts which attempt to do this with respect to support, which is regarded as an essential obligation of the marital relation, one having greater significance than property rights. Another way of putting the same point is to say that certain duties incident to marriage are of such public importance that they cannot be left to the parties' control * * *." (footnotes omitted.)

We are not so sure as some of the critics that such agreements do not tend to invite inconsiderateness and marital conflict. *See Cohn v. Cohn* note 1 *supra*. In addition, the state has a paramount interest in the adequate support of the wife both before and after divorce or separation.

Despite the advance of women's rights and their increasing participation as wage earners, we believe there is much to be said for a public policy that protects the right of a wife to receive support upon separation or divorce. There is still a vast number of women with no skills who are only marginally employable or who properly devote their full time to the rearing of their children. We hold that antenuptial agreements which prohibit alimony are contrary to public policy and void.

The husband contends the legislature has expressed approval of antenuptial agreements by the adoption of ORS 108.140, which is as follows:

"A man and woman who are parties to an in-

tended marriage may enter into a prenuptial agreement in writing concerning their respective *personal property* holdings, and the final disposition thereof, upon such terms and conditions as may be mutually determined. If such intended marriage is consummated, such prenuptial agreement shall be binding upon the parties thereto, their heirs, legal representatives and assigns. This section shall not invalidate prenuptial agreements entered into prior to August 2, 1951." (Emphasis ours.)

He further contends this court has approved of antenuptial agreements in *Moore v. Schermerhorn*, 210 Or 23, 307 P2d 483, 308 P2d 180, 65 ALR2d 715 (1957), and *Newton v. Pickell et al*, 201 Or 225, 269 P2d 508 (1954), where such agreements concerning the disposition of real property were upheld. He also points to numerous decisions of this court approving post-nuptial agreements made in contemplation of immediate separation or divorce.

We believe the enactment of ORS 108.140 and the aforementioned opinions of this court concerning antenuptial agreements are no indications, one way or the other, concerning the legislature's or this court's views on antenuptial agreements which provide there shall be no alimony or support in the event of separation or divorce. Both the statute and the decisions relate to property rights and not to alimony. An argument can be made that any antenuptial agreement concerning the disposition of property upon either the death of one of the parties or divorce may result in one of them ultimately being put in a position where he or she is not adequately provided for, and, therefore, insofar as public policy is concerned, antenuptial agreements concerning alimony and property should be treated similarly. The refutation of such an argu-

ment is that the rule prohibiting antenuptial agreements concerning alimony gives courts the ability to allow the wife and society a measure of protection and still leaves the parties to the marriage as much freedom as possible to contract concerning their affairs. It is a balancing of contending values.

Insofar as postnuptial agreements made in contemplation of immediate separation or divorce are concerned, they do not suffer, as antenuptial agreements do, from the time lag and the resultant change in economic circumstances which tend to bring about untoward results. Both parties know their financial circumstances at the time of a separation, which is not the case when an antenuptial agreement is made. Neither do such postnuptial agreements tend to promote separation or divorce because the parties have already failed in their marriage relationship.

We believe the trial court properly exercised its authority under the statute to award alimony. The opinion of the Court of Appeals is set aside and the decree of the trial court is affirmed.