Argued May 30, affirmed in part; reversed in part June 23, petition for rehearing denied July 25, 1972, reversed February 23, rehearing denied March 30, 1973

See later issue Oregon Reports.

UNANDER, *Appellant, v.* UNANDER
(No. 366-164), *Respondent.*

498 P2d 807

*Edward I. Engel,* Portland, argued the cause for appellant. With him on the briefs were Goldsmith, Siegel & Engel, Portland.

*Dwight L. Schwab,* Portland, argued the cause for respondent. With him on the brief were Hutchinson, Schwab, Burdick & Hilton, Portland.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C.J.

The significant question in this appeal is whether an antenuptial agreement which provides for alimony for the wife-to-be in the event of divorce should be enforced by a divorce court. The agreement provided that in the event of divorce the husband would: (1) pay the premiums on a policy of insurance on his life, ownership of the policy to be transferred to the wife; (2) pay the wife $500 per month support until her death or remarriage; and (3) provide the wife (by insurance or otherwise) with an allowance for her medical expenses. On this appeal the wife does not contend that any of the three benefits described above should be considered as other than alimony. For the reasons which follow we hold that such an agreement is void as against public policy.

In the case at hand the parties entered into an antenuptial agreement immediately prior to their marriage in March 1970. There is no claim of over-reaching and nondisclosure. The agreement was entered into at the request of the husband who now contends that it is void.

The marriage was of short duration, and in January of 1971 the husband filed a complaint seeking divorce, the wife cross-complained, and in July of 1971 she received a decree of divorce. The trial court in its decree stated:

"That except for the antenuptial agreement entered into by the parties prior to their marriage,

alimony would not be appropriate in view of the very short existence of the marriage."[1]

The court then went on to hold that the antenuptial agreement provision concerning alimony was valid and enforceable and decreed that the husband comply with the terms of the agreement set forth above.

The precise point is a matter of first impression in Oregon. In *Reiling v. Reiling*, 1 Or App 571, 463 P2d 591 (1970), we were dealing with an antenuptial agreement which provided that in the event of divorce, alimony was to be waived. Despite the agreement, at the time of divorce the wife sought and received alimony in the amount of $100 per month. We reversed, holding that the antenuptial contract waiving alimony was valid and enforceable, stating:

> "Here both parties had been previously married and each was competent and mature. The antenuptial agreement was entered into in good faith, freely, fairly and understandingly. It affected only the rights of the parties to it. The instrument itself was fair and reasonable. It is, therefore, presumptively valid. If it were necessary, under the foregoing principles, to provide for the support of the plaintiff by the defendant, the contract would have to give way to that extent. Here, however, the plaintiff testified that she would be going to work in a short time and while some support would no doubt be convenient to her, there is no showing of necessity for support * * *." 1 Or App at 574-75.

On review, the Supreme Court in *Reiling v. Reiling*, 256 Or 448, 474 P2d 327 (1970), held to the con-

---

[1] The record discloses that the wife was employed at a fairly substantial salary up until the time of the marriage and was employable and seeking employment at the time of the divorce. At oral argument before this court counsel for the wife conceded that the trial judge was probably correct in her evaluation of the situation of the parties.

trary. As we read that opinion, the Supreme Court held that regardless of the fairness or the equity of such allowances in individual cases, they are void as against public policy. We interpret that opinion as grounding its conclusion on three propositions.

# I

"Despite the advance of women's rights and their increasing participation as wage earners, we believe *there is much to be said for a public policy that protects the right of a wife to receive support upon separation or divorce.* There is still a vast number of women with no skills who are only marginally employable or who properly devote their full time to the rearing of their children. We hold that antenuptial agreements which prohibit alimony are contrary to public policy and void." (Emphasis supplied.) 256 Or at 451.

# II

" '❊ * * The real reason for invalidating such antenuptial contracts seems to be that although the provisions may be fair at the time they are made, they may not be later when the separation or divorce occurs. *The wife may thus be left with entirely inadequate support, or the husband with an excessively heavy liability to his wife * * ❊.'* " (Emphasis supplied.) 256 Or at 450-51, quoting Clark, Law of Domestic Relations 28-29 (1968).

# III

"Authority is almost unanimously to the effect that antenuptial agreements to forego alimony are void because they are contrary to public policy. The rationale is twofold. Some cases say that *such agreements encourage* divorce because the husband knows that he will not have to support his wife if a divorce ensues, and, therefore, he will not treat her with the consideration with which he otherwise would have treated her. This argument is refuted by

some critics who say that, on the other hand, such an agreement is an inducement to the wife to bear with her husband's foibles because she knows she will receive no support in the event of divorce. Such critics contend there is no demonstrable evidence that such an agreement promotes divorce. Other cases hold that the state has a paramount interest in the adequate support of its citizens, and, therefore, the husband's duty of support, either before or after divorce, should not be left to private control. This argument has more and more cogency as government increasingly considers itself responsible for the adequate support of its citizens." (Emphasis supplied.) 256 Or at 449-50.

The first proposition on its face is an argument only against antenuptial contracts which provide that there shall be no alimony and would not seem to have direct relevance to the opposite situation.

The second proposition indicates a concern with the financial status of the husband as well as that of the wife.

While the third proposition is grounded on the concept that if a husband cannot be required to pay alimony he will be uninhibited in seeking divorce, we think the argument that a guarantee of substantial alimony may well encourage a wife to seek divorce has equal force.

We conclude that *Reiling v. Reiling*, 256 Or 448, 474 P2d 327 (1970), carried to its logical conclusion, requires that alimony provisions in antenuptial agreements be held void as against public policy. In the case at bar we agree with the trial court that on the merits there is no basis for an award of alimony.

The husband also contends that he should have been awarded the decree of divorce. While the question

is a close one, our review of the record leads us to uphold the trial judge's decision on this issue.

That portion of the decree awarding alimony to the defendant is reversed; that portion of the decree granting a decree of divorce to defendant is affirmed. No costs to either party.