Argued November 2, 1972, reversed February 23, petition for
rehearing denied March 30, 1973

UNANDER, *Respondent, v.* UNANDER,
*Petitioner.*

506 P2d 719

*Dwight L. Schwab,* Portland, argued the cause for petitioner. With him on the briefs were Hutchinson, Schwab, Burdick & Hilton, Portland.

*Edward I. Engel,* Portland, argued the cause for respondent. With him on the briefs were Goldsmith, Siegel & Engel, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, TONGUE, HOWELL and BRYSON, Justices.

DENECKE, J.

In *Reiling v. Reiling,* 256 Or 448, 474 P2d 327 (1970), we held invalid an antenuptial agreement which provided that the wife would be paid no alimony. We now are called upon to decide whether to adhere to that decision and whether that decision also requires us to hold invalid an antenuptial agreement providing that the wife is to receive $500 per month alimony.

The trial court distinguished *Reiling v. Reiling,* supra (256 Or 448), and held the agreement valid. The

Court of Appeals did not believe *Reiling* could be distinguished and held the agreement invalid. *Unander v. Unander*, 10 Or App 100, 498 P2d 807 (1971). We granted review.

We have concluded that we were incorrect in our decision in *Reiling v. Reiling,* supra (256 Or 448).

The facts in the present case are not dispositive of the issue but are influential as being typical of the facts underlying many antenuptial agreements.

The parties can be classified as middle-aged. Both had been married before. The husband had children by his previous marriage and was making substantial alimony and support payments. He was a man of property. There were no children of the present marriage. The wife had a well-paying position which she relinquished shortly after marriage.

The husband suggested before marriage that they enter an agreement. There was some negotiation between the parties' attorneys over the terms. As executed, it provided that in the event of divorce, the husband was to pay the wife $500 per month alimony; provide a $25,000 life insurance policy, and pay wife's medical expense. The property they each had upon entering marriage was to remain their separate property.

The husband filed for divorce about nine months after the marriage and the wife counterclaimed for divorce. The court found both parties were at fault, but the wife was least at fault and was awarded the divorce. The trial court awarded alimony per the agreement and observed that except for the agreement, alimony would not be appropriate because of the short existence of the marriage.

Our decision in *Reiling* was based upon two premises: (1) agreements providing no alimony is to be paid encourage divorce because the husband is apt to treat his wife without the consideration he may have if he had foreseen that he may have been required to pay her alimony in the event of a divorce; and (2) the state has a "paramount interest in the adequate support of its citizens, and, therefore, the husband's duty of support, either before or after divorce, should not be left to private control." 256 Or at 450.

Upon further reflection we are now of the opinion that the first premise, that such agreements encourage divorce, is of extremely doubtful validity.

A recurring picture painted in many of the decisions holding such agreements void is of a wrongdoing husband attempting to escape liability for alimony to an innocent wife. At the time we decided *Reiling* divorce in Oregon, ostensibly, could only be awarded against one guilty of fault or greater fault. In practice this was not true and the legislature recognized the situation and provided for "no fault" divorce. Oregon Laws 1971, ch 280, p 387. Now evidence of "fault" will ordinarily not be admissible and cannot be the basis of dividing property or awarding alimony. ORS 107.036.

The adoption of the "no fault" concept of divorce is indicative of the state's policy, as exhibited by legislation, that marriage between spouses who "can't get along" is not worth preserving. We believe a marriage preserved only because good behavior by the husband is enforced by the threat of having to pay alimony is also not worth preserving, particularly between spouses who typically are middle-aged and have no children in the home.

If such marriages are regarded as worth preserving, as pointed out in *Reiling,* the provision for no alimony may work to preserve a marriage as much as to destroy it. The wife may "bear with her husband's foibles because she knows she will receive no support in the event of divorce." 256 Or at 449.

As we observed in *Reiling,* the legislature has expressly approved antenuptial agreements concerning the spouses' respective personal property. ORS 108.140. We also observed that ante-nuptial agreements concerning the disposition of real property had been upheld. *Moore v. Schermerhorn,* 210 Or 23, 307 P2d 483, 308 P2d 180, 65 ALR2d 715 (1957). We decided they were not analogous to agreements foregoing alimony because they did not interfere with the interest of the state in the wife's welfare and with the right of the wife to receive adequate support from a former husband. Leaving aside that contention for the moment, such agreements can be a cause of divorce as much as an agreement on alimony. In *Posner v. Posner,* 233 S2d 381 (Fla 1970), a wife was attacking an antenuptial agreement whereby she would receive $500 per month alimony and surrender any claim to other property. The court held the provision valid. Pointing out the inconsistencies of the traditional view, the court observed that antenuptial agreements dividing property can be an incentive to divorce though such agreements have been favored in law. A spouse could wisely decide that she could better herself monetarily by obtaining a divorce with a lucrative alimony provision rather than waiting for her spouse to die and receive an impecunious testamentary disposition.[1]

---

[1] The *Posner* case and the solution we have followed in this case are discussed in 4 Creighton L Rev 180 (1971).

The second ground for our decision in *Reiling* was the more important; that is, that the state has an interest in the support of its citizens and one spouse's duty to support the other cannot be nullified by private agreement. We continue to regard this as a valid premise. Such a principle, however, does not necessarily lead to the conclusion that all antenuptial agreements concerning alimony are invalid.

■ We have now come to the conclusion that antenuptial agreements concerning alimony should be enforced unless enforcement deprives a spouse of support that he or she cannot otherwise secure.[2] A provision providing that no alimony shall be paid will be enforced unless the spouse has no other reasonable source of support.

■ If the circumstances of the parties change, the court can modify the decree just as it can modify a decree based upon an agreement made in contemplation of divorce which has a provision regarding payment of support. *Warrington v. Warrington,* 160 Or 77, 83 P2d 479 (1938); *Prime v. Prime,* 172 Or 34, 41-50, 139 P2d 550 (1943); *Ross v. Ross,* 240 Or 561, 564-566, 403 P2d 19 (1965).[3]

---

[2] The antenuptial agreement, of course, must be valid in other respects, particularly it must have been fairly entered into by spouses who have a fiduciary duty to each other which includes a duty of full disclosure of assets. Newton v. Pickell, 201 Or 225, 230, 269 P2d 508 (1954).

[3] "* * * We have already noted the distinction as to fully executed transactions, and there may be instances in which even an executory agreement for future periodical payments, when approved and incorporated in a decree, should be held invulnerable to modification, even in the event of changed conditions. For example, if husband and wife are each the owners of real property, and if they agree that in lieu of a division of their property between them the rights of the wife shall be liquidated by means

This solution has the merit of according the parties to the antenuptial bargain the same freedom of contract that other parties are accorded but preserving to the state the right to invalidate the contract when required to insure adequate support for one of its citizens.[①]

We were accurate in stating in *Reiling* that the great weight of authority held alimony provisions in antenuptial agreements were invalid. However, the very recent judicial trend is to the contrary. *Posner v. Posner,* supra (238 S2d 381); *Volid v. Volid,* 6 Ill App3d 386, 286 NE2d 42 (1972).

■ We believe it necessary to depart from the principle of stare decisis primarily because we have become convinced that it is important to a large number of citizens, as typified by the parties to this case, that they be able to freely enter into antenuptial agreements in the knowledge that their bargain is as inviolate as any other except when it must be voided to provide support.

The judgment of the Court of Appeals is reversed and the trial court's decree reinstated.

---

of payments in the nature of an annuity, and if the agreement shows and the court finds that such provision was adopted as and constitutes a fair method of liquidating the actual property rights of the wife and approves the agreement in the decree, we suppose that such payments in the nature of an annuity would not be subject to later modification in the event of changed conditions. * * *." Prime v. Prime, 172 Or 34, 42-43, 139 P2d 550 (1943).

① The Court of Appeals in *Reiling* noted that alimony was not necessary for the support of the wife; if it had been the court indicated the contract "would have to give way to that extent." 1 Or App 571, 574.