Thelma E. **CONNOLLY**, Plaintiff and Appellant,

v.

William T. **CONNOLLY**, Defendant and Respondent.

No. 12137.

Supreme Court of South Dakota.

Sept. 21, 1978.

Rehearing Denied Oct. 13, 1978.

---

Thomas W. Parliman of Parliman & Parliman, Sioux Falls, for plaintiff and appellant.

Everett A. Bogue of Bogue, Weeks & Rusch, Vermillion, for defendant and respondent.

WOLLMAN, Chief Justice.

This is an appeal from that portion of a judgment and decree in this divorce action that upheld as valid and enforceable an antenuptial agreement concerning appellant's right to alimony. We reverse and remand.

Appellant and respondent were married on February 15, 1969. Appellant was then 64, and respondent was 81. Both parties had been married before. Some five days prior to the marriage, the parties signed an agreement in the office of respondent's attorney that provided in part:

It is understood and agreed by and between the parties hereto that each of them relinquishes and releases the other from any and all claims of support and of . any and all interest in the property of the other except as herein provided, meaning and intending that neither of the parties

hereto shall acquire any interest in the property of the other by reason of their marriage except as herein provided.

It is further agreed between the parties hereto that in the event of divorce or legal separation of the parties during the lifetime of both parties, then regardless of the fault of either party, the other benefits herein provided for and assured to the party of the second part shall cease. In lieu thereof, party of the first part will provide an annuity for the benefit of party of the second part in such an amount and so designed as to yield to party of the second part an income equal to the benefits she would have received from her widow's pension from Northern States Power Company (which terminates by reason of her marriage) during the period of her life expectancy at the time of such divorce or separation as based on the American Experience Mortality Table; provided further that such annuity shall cease in the event of her remarriage or death before the expiration of the period of her life expectancy, after which the remainder in the annuity fund will be paid to the party of the first part of [sic] to his children if he shall then be deceased.

On March 31, 1970, the parties by written agreement modified the antenuptial agreement by striking a portion that is not material to the issue presented by this appeal. This subsequent agreement also recited that the parties were confirming and ratifying the remainder of the original agreement.

The marriage did not prove to be a happy one, and in August of 1975, appellant commenced divorce proceedings. She included in her prayer for relief a claim for alimony. The trial court held that those portions of the antenuptial agreement set forth above were valid and enforceable. The judgment and decree of divorce accordingly provided that appellant should receive $149.96 per month (the amount appellant would have received from her pension from her former employer had she not remarried) during her remaining eight year life expectancy, or until her remarriage or death.

Appellant contends that the provisions in the antenuptial agreement that purport to restrict her right to receive alimony in the event of a divorce are void and unenforceable because they are contrary to the public policy of this state. At one time, it was the rule that any attempt by the parties to a marriage to diminish or waive by way of an antenuptial agreement a husband's duty to support his wife by way of alimony was unenforceable as being contrary to public policy. See *In re Marriage of Higgason,* 10 Cal.3d 476, 110 Cal.Rptr. 897, 516 P.2d 289, and cases cited therein. A concise statement of the bases for the rule is found in *In re Marriage of Gudenkauf,* Iowa, 204 N.W.2d 586, 587:

> The rule has two principal bases. One is that such a provision may tend to facilitate or induce dissolution of the marriage. . . . The policy which invalidates antenuptial prohibitions of alimony does not depend upon the result in a given case. It operates *ab initio* to void such provisions in every case.

> The other basis for the rule is the principle that the interspousal support obligation is imposed by law and cannot be contracted away. *Norris v. Norris,* [Iowa, 174 N.W.2d 368 (1970)] at 370, and citations; *Garlock v. Garlock,* 279 N.Y. 337, 18 N.E.2d 521 (1939); § 598.21, The Code. The policy involved is that conditions which affect alimony entitlement cannot accurately be foreseen at the time antenuptial agreements are entered, and public interest in enforcement of the legal obligation to support overrides a premarital anticipatory forfeiture of alimony. *Reiling v. Reiling,* 256 Or. 448, 474 P.2d 327, 328 (1970).

Some of the more recent decisions, however, seem to have receded from this flat prohibition against enforcing agreements of this nature in favor of a more flexible ad hoc approach that determines the validity of such an agreement on the basis of the facts of each case. See, e. g., *In re Marriage of Dawley,* 17 Cal.3d 342, 131 Cal. Rptr. 3, 551 P.2d 323 (overruling in part *In re Marriage of Higgason,* supra); *Unander v. Unander,* 265 Or. 102, 506 P.2d 719 (in effect overruling *Reiling v. Reiling,* 256 Or. 448, 474 P.2d 327, cited in the *Gudenkauf* case, supra); *Posner v. Posner,* Fla., 233 So.2d 381; *Volid v. Volid,* 6 Ill.App.3d 386, 286 N.E.2d 42.

Whatever the trend of judicial decisions in other jurisdictions may be with respect to the continuing validity of the rule that antenuptial agreements of this nature are void as against public policy, we conclude that the provisions in question here are contrary to the public policy expressed in our statutes. It is the obligation of the husband to support his wife. SDCL 25-7-1. SDCL 25-2-13 provides:

> A husband and wife cannot by any contract with each other alter their legal relations, except as to property, and except that they may agree in writing to an immediate separation and may make provision for the support of either of them and of their children during such separation. The mutual consent of the parties is sufficient consideration for such separation agreement.

SDCL 25-4-41 provides:

> Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support during her life or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects.

Respondent cites our recent decision in *Schutterle v. Schutterle,* S.D., 260 N.W.2d 341, in which we upheld the validity of an antenuptial agreement that concerned the separately owned property of the parties, and SDCL 25-2-10, which provides that parties to a marriage may enter into transactions with each other respecting property. We do not consider the *Schutterle* case nor the cited statute as authority for the proposition that parties to a marriage may validly contract with respect to the matter of the payment of alimony in the event of a

divorce. Nor do we believe that this court's decision in *Evens v. Evens,* 55 S.D. 482, 226 N.W. 725, supports the argument that antenuptial agreements limiting alimony are valid in this state. The *Evens* case concerned an agreement for support entered into during the pendency of an action for divorce. Moreover, the terms of the agreement were incorporated in the judgment of divorce. Thus, the agreement was one that was specifically provided for by the terms of what is now SDCL 25–2–13.

More to the point is *Shoop v. Shoop,* 58 S.D. 593, 237 N.W. 904, which concerned a settlement agreement entered into during the pendency of divorce proceedings and which provided for the payment of $25 per month in the form of alimony. The agreement was later confirmed and approved by the trial court in its decree of divorce. On appeal from a subsequent order that modified the decree by striking the provision for the payment of alimony, this court was faced with the question whether, under what is now SDCL 25–4–41, the trial court had the power to modify a judgment providing for support that was based upon the contract of the parties. In answering this question in the affirmative, this court stated:

> It is now generally recognized that agreements of the kind entered into by the parties here, are not void if they do not facilitate the obtaining of a decree of divorce. 13 C.J. 464. However, the court in the first instance is not controlled by the contract or agreement between the parties, and may adopt or reject it as seems consistent and proper. The decree for allowance for support, under our statute, does not rest upon the agreement, but the agreement may be considered the same as other evidence in aiding the court to determine the proper allowance to be made. The allowance finally determined and fixed in the decree is the result of judicial investigation, and not the result of an agreement between the parties. It is no doubt true that the agreement of the parties concerning support is in the majority of cases adopted by the court, but this does not alter or change

the legal principle upon which the decree is based. Under our statute the court has jurisdiction to make this allowance for support, and to modify the allowance from time to time. To hold that because the court in the first instance had fixed the amount as agreed upon by the parties, the decree was, therefore, not subject to modification, would deprive the court of a considerable part of this jurisdiction especially provided for by statute. 58 S.D. at 600, 237 N.W. at 907.

See also *Simmons v. Simmons,* 67 S.D. 145, 290 N.W. 319.

■ We conclude that when read together SDCL 25–7–1, 25–2–13, and 25–4–41 contemplate that a husband's duty of support may be the subject of a valid agreement entered into between the parties to a marriage subsequent to the marriage and in contemplation of separation or divorce, but that in the event of a divorce the trial court has the ultimate authority to approve or reject the agreement and, if it approves the agreement, to later modify the provisions for support.

■ The tenor of our statutes and decisions is that the post-divorce obligation of a husband to support his ex-wife is affected with such a public interest that the parties in a divorce action may not conclusively agree upon the terms of future support payments. The same principle should be applied even more strictly in an antenuptial setting where, as pointed out in the *Gudenkauf* case, supra, conditions which affect a spouse's entitlement to alimony cannot accurately be foreseen. Accordingly, we conclude that to insure that the public's interest in the enforcement of a husband's duty to support his wife is not thwarted by antenuptial agreements that may bear no reasonable relationship to the subsequent situation of the parties, we must hold that such agreements are void and unenforceable. Such a holding, we believe, is more consistent with the public policy expressed in our statutes than would be a holding similar to those in *Posner v. Posner, Unander v. Unander,* and *Volid v. Volid,* supra. Accord-

ingly, we hold that the provisions in the antenuptial agreement in question which purport to limit respondent's obligation to support appellant may not be enforced. That portion of the judgment appealed from is reversed and the case is remanded to the circuit court for further proceedings not inconsistent with the views set forth herein.*

All the Justices concur.

* We have considered respondent's motion to dismiss the appeal for appellant's failure to comply with our statutory appellate procedure and have concluded that the motion should be denied.