Argued and submitted October 6, 1999, appeal dismissed; judgment modified in part; otherwise affirmed on cross-appeal April 12, petition for review denied August 15, 2000 (330 Or 553)

## In the Matter of the Marriage of

### Donald Leslie BRIDGE,
*Respondent - Cross-Appellant,*

*and*

### Barbara Louise BRIDGE,
*Appellant - Cross-Respondent.*

## (9604325CV; CA A103185)

998 P2d 780

Allan F. Knappenberger argued the cause and filed the brief for appellant - cross-respondent.

George W. Kelly argued the cause and filed the brief for respondent - cross-appellant.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Wife appeals from a judgment of dissolution of marriage under ORS 107.105, claiming that the trial court erred in dividing the parties' property according to a prenuptial agreement. Husband cross-appeals, challenging the trial court's award of spousal support. We dismiss the appeal on jurisdictional grounds, ORS 19.240, and, on *de novo* review, ORS 19.415(3), vacate the spousal support award on cross-appeal.

At the time of trial, husband was 73 years old and wife was 63 years old. The parties married on April 25, 1987, and had been married for ten years at the time of the dissolution. Wife had been married and divorced at least once before, and this was husband's third marriage. Both parties had grown children from previous marriages. On April 7, 1987, the parties met in husband's attorney's office and signed a prenuptial agreement that the attorney had prepared. Although wife was aware of the purpose of the meeting before she went to the attorney's office and was reminded at that time that she could obtain separate legal counsel, she did not seek counsel. At trial, both parties testified that when they entered into the agreement, they understood that it essentially meant that "what's yours is yours and what's mine is mine." The prenuptial agreement provides that "Husband and Wife * * * waive and release any claim for support that may accrue by reason of their marriage that may arise by operation of law upon their marriage." In December 1988, the parties amended the agreement to provide that "all household furniture and furnishings * * * shall be the property of both parties, each as owners of an undivided one-half interest in such furniture and furnishings, with the right of survivorship to the survivor * * *."[1]

The trial court ruled that the prenuptial agreement was entered into in a knowing and voluntary fashion. Nonetheless, the court did not enforce the agreement except to the extent that it awarded each of the parties "all property owned

[1] The Uniform Premarital Agreement Act, ORS 108.700 through ORS 108.740, does not apply because the agreement was executed in 1987. *Purcell and Purcell*, 99 Or App 668, 783 P2d 1038 (1989).

respectively by each of them at the time of their marriage" and "all property * * * acquired by each of them from any source during their marriage[.]" In addition to the above awards, the court awarded wife spousal support in the amount of $400 a month for five years "as a matter of public policy."

Wife filed a timely notice of appeal from the judgment with this court on August 17, 1998. However, the parties dispute whether she properly served the notice of appeal on husband. Husband contends that wife's service on his trial attorney did not fulfill the statutory requirement that she serve either husband or husband's counsel of record because the judgment expressly discharged the trial attorney as the attorney of record for husband. Wife asserts that the trial attorney either was the attorney of record at the time of service or, in the alternative, that he became attorney of record within the time allowed for service and, therefore, any error in service was cured.

ORS 19.240(2) provides, in part, that an appeal "shall be taken by causing a notice of appeal * * * to be served" on "all parties who have appeared in the action, suit or proceeding[.]" The merits of an appeal cannot be considered without the proper service of the notice of appeal because service of the notice is jurisdictional. ORS 19.270(2)(a); *Murrieta v. Brewster*, 328 Or 434, 436, 981 P2d 330 (1999). ORS 19.500 provides that the notice shall be served in the manner provided in ORCP 9 B. ORCP 9 B provides, in relevant part:

> "Whenever under these rules, service is required or permitted to be made upon a party, and that party is represented by an attorney, the service shall be made upon the attorney unless otherwise ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to such attorney or party, by mailing it to such attorney's or party's last known address, or, if the party is represented by an attorney, by telephonic facsimile communication device as provided in section F of this rule."

As appellant, wife has the burden of alleging and proving service. *Mullens v. L. Q. Development*, 312 Or 599, 608, 825 P2d 1376 (1992).

The judgment that discharged husband's trial attorney as the attorney of record was entered on August 10, 1998. Wife's counsel certified that he served a copy of the notice of appeal on August 14, 1998, by mailing it to the trial attorney. That service was insufficient unless the trial attorney was acting as husband's attorney at the time. There is no evidence of that fact. Wife points to the fact that the trial attorney filed the cross-appeal on behalf of husband on August 26. However, the fact that the trial attorney represented husband on August 26 does not establish that he represented him on August 14 in light of the established fact that he was not husband's attorney of record as of August 10. Regarding wife's alternative argument that the filing of the cross-appeal within the 30 days to appeal constituted service and cured any defect, the record is uncontroverted that at no time when husband's trial attorney was the attorney of record on the cross-appeal did wife serve him with a notice of appeal that would have satisfied the jurisdictional requirement. On these facts, we conclude that wife has failed to meet her burden of proving service on husband, and we dismiss her appeal for lack of jurisdiction.

■■ On cross-appeal, husband assigns error only to the trial court's award of spousal support. He argues that the prenuptial agreement barred any spousal support award. In order to address husband's argument, we must determine whether the prenuptial agreement is enforceable and is relevant to the issues in the dissolution proceeding. *See Merrill v. Merrill*, 275 Or 653, 656, 552 P2d 249 (1976) (holding that "[t]he validity of a prenuptial agreement and its execution must be interpreted with reference to its specific language and the facts surrounding its execution").[2] As we have already stated, wife knew before the appointment with the attorney that she was going to be asked to sign a prenuptial agreement. The attorney read the agreement to her more than once, including the provision that "Wife acknowledges

---

[2] *See also Baxter and Baxter*, 139 Or App 32, 36, 911 P2d 343, *rev den* 323 Or 483 (1996) (explaining that the courts "primarily consider whether the parties were aware of the purpose of the agreement and the nature and extent of the property affected by it, and whether the document was presented to the receiving party at a reasonable time before the wedding to allow that individual the opportunity to seek counsel and to review its terms").

that she has been advised of her right to be represented by separate counsel who would further explain to her the legal effect of this agreement." In addition, she was told by husband that she could obtain separate legal counsel. Although wife's health, preparations for the upcoming marriage and the health of a grandchild operated as distractions for her at the time, we are not persuaded that those circumstances prevented her from knowingly entering into the agreement. We have reviewed all of the evidence in the record and find that there is no evidence of fraud or coercion. Rather, the evidence shows that the parties willingly entered into the agreement with the knowledge of its import.

The next question is whether the agreement applies to issues involved in the dissolution of the parties' marriage. The agreement identifies the property of each party, identifies the status of that property and provides that property acquired during marriage will be considered the separate property of the parties. It also includes a release of mutual property rights and relieves each party of liability for the debts of the other. In addition, there is a section entitled "PROPERTY DISPOSITION" that provides, in part:

"a) The parties have the intent and desire to define and set forth the respective rights of each and the property of each other after their marriage.

"b) The parties intend and desire that all property owned respectively by each of them at the time of their marriage and all property that may be acquired by each of them from any source during their marriage shall be respectively their separate property except as otherwise provided in writing by them or as provided in this agreement.

"c) Each of the parties desire to accord to the other the absolute and restricted privilege and power to dispose of any and all property on death, which may belong to him or her at such time. * * *

"* * * * *

"f) Each of the parties forever waives, releases and relinquishes any right or claim of any kind, character or nature whatsoever that either may have or shall have in and to the estate, property, assets or other affects of the other under any present or future law of the State of

> Oregon, or of any other state, or of the United States, except as otherwise specifically provided in this agreement, or any subsequent agreement executed by the parties; and each of the parties forever waives, releases and relinquishes any right or claim that he or she may now have or shall have pursuant to the provisions of Oregon Revised Statutes as such sections now exist or may hereafter be amended or pursuant to any present or future law of any state or of the United States to elect to take in contravention of the terms of any last will of the other, including any last will now executed or which may be executed hereafter, or any disposition of property made by the other during his or her lifetime, or otherwise."

While the text of the agreement does not contain the words divorce or dissolution, the language is broad and speaks of "relinquish[ing] any right or claim of any kind * * * under any present or future law[.]" Nothing in the agreement explicitly states that its provisions apply only upon death or otherwise excludes enforcement in the event of a dissolution of marriage. Although both parties testified that they understood that the agreement would control upon a spouse's death, we also are persuaded from the testimony and the text of the agreement that the parties understood that it would apply in the event of an annulment or a dissolution.

The question remains whether the prenuptial agreement operates to bar an award of spousal support. The agreement provides:

> "RELEASE OF MUTUAL PROPERTY RIGHTS. Husband and Wife mutually waive any and all property rights in the separate property of each, and further waive and release any claim for support that may accrue by reason of their marriage that may arise by operation of law upon their marriage."

Under that language, wife waived any claim for spousal support. In *Unander v. Unander*, 265 Or 102, 107, 506 P2d 719 (1973), the court overruled the holding in *Reiling v. Reiling*, 256 Or 448, 474 P2d 327 (1970), that an agreement that provided that the wife would be paid no support upon divorce was contrary to public policy. In *Unander*, the court rejected

one of the grounds on which *Reiling* was decided, while continuing to embrace the other. The court said:

> "The second ground for our decision in *Reiling* was the more important; that is, that the state has an interest in the support of its citizens and one spouse's duty to support the other cannot be nullified by private agreement. We continue to regard this as a valid premise. Such a principle, however, does not necessarily lead to the conclusion that all antenuptial agreements concerning alimony are invalid.

> "We have now come to the conclusion that antenuptial agreements concerning alimony should be enforced unless enforcement deprives a spouse of support that he or she cannot otherwise secure. A provision providing that no alimony shall be paid will be enforced unless the spouse has no other reasonable source of support." *Unander*, 265 Or at 107 (footnote omitted).

In this case, wife receives social security and monthly income from her state retirement account. In addition, wife had rent-free housing in exchange for managing an apartment complex at the time of trial. Wife has not demonstrated that she "has no other reasonable source of support." Consequently, there is no reason why her agreement not to make a claim for support should not be enforced. Therefore, the trial court erred in awarding spousal support.

Appeal dismissed. On cross-appeal, judgment modified to vacate award of spousal support as of date of entry of appellate judgment; otherwise affirmed.