Argued April 4, Affirmed May 15, 1963

# MARTIN $v.$ GOOD

381 P. 2d 713

*Norman K. Winslow,* Salem, argued the cause for appellant. With him on the briefs was Howard Kaffun, Salem.

*Allan G. Carson,* Salem, argued the cause for respondent. On the brief were George R. Duncan, Jr., Stayton, and Carson, Carson & Carson, Salem.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

DENECKE, J.

The plaintiff seeks to rescind an exchange of motels between himself and the defendant principally upon the ground that the defendant had misrepresented the income of the property. The trial court held for the defendant.

The plaintiff owned the Last Frontier Motel and Cafe. This was located in the Cascades on one of the highways through the mountains. He listed it for sale with a Salem realtor. Through him plaintiff learned

of the defendant's property in Porterville, California. This was called Sequoia Motel and was solely a motel operation. It was operated personally by defendant. Sunnyvale Realty, by R. W. Phillips, was trying to sell the motel for the defendant.

Plaintiff went to Porterville in April, 1959, for the purpose of investigating the property and stayed several days at the Sequoia Motel. The defendant, Mrs. Good, and the realtor, Mr. Phillips, were there at the same time and conversations were had about the properties and a possible exchange. At the time of this visit, the plaintiff, Mr. Martin, on April 2, 1959, signed an agreement whereby he agreed to exchange the properties, with no other consideration to be paid by either party. Mrs. Good did not so agree at this time.

About June 1, 1959, Mrs. Good and Mr. Phillips came to Oregon and looked over the Last Frontier. They too stayed several days. Before defendant left the parties agreed on an exchange in which Mrs. Good was to receive $7,500, as well as the Last Frontier. Mr. Martin took possession of the Sequoia on July 1, 1959, and installed his sister as manager. Mrs. Good took over management of the Last Frontier.

By letter, dated August 30, 1960, the plaintiff wrote the defendant that she had misrepresented the gross income of Sequoia and for this reason plaintiff was rescinding the exchange. A suit for rescission was filed in November, 1960. In ruling for the defendant, the trial court made no findings of fact or conclusions of law. It merely stated in the decree, "that the equities of this suit are with defendant and against plaintiff."

■ The plaintiff alleged in his complaint and he personally testified that Mrs. Good and Mr. Phillips told him the gross revenue of Sequoia was $3,000 to $5,000 per month. He further testified that from what

he observed at the motel he believed at the time that the $3,000 figure was very possible but he discounted the $5,000. According to the income tax returns filed by Mrs. Good, her gross revenue for the 12 months she operated Sequoia averaged about $1,600 per month. Under Mr. Martin's ownership the average monthly gross income was lower. Under Mr. Martin's ownership the gross revenue was not sufficient to pay operating expenses and payments on obligations which plaintiff assumed in the exchange.

Records were available before the exchange was consummated which, upon quick examination, would have shown Sequoia produced a gross income substantially less than $3,000 per month. Mr. Martin did not ask to examine the records. Defendant did not offer to produce them.

Before passing upon this contention of misrepresentation of income, another contention of plaintiff should be stated and considered with the income misrepresentation allegation.

Plaintiff alleges that the consideration passing to him in the exchange was so inadequate as to afford an independent ground for rescission; or, if the inadequacy of consideration is not, standing alone, a sufficient ground for rescission, that it, coupled with some evidence of misrepresentation, is a combination affording ample ground for rescission.

Plaintiff contends that the Sequoia has no value over and above the amount of the encumbrances on it, $77,000. An appraiser so testified. He based his opinion solely on the capitalization method; he has never seen the property. Mrs. Good testified the Sequoia was worth approximately $75,000 over and above encumbrances. The Last Frontier, plaintiff contends, has

a market value of approximately $70,000. It is unencumbered.

> "The rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or in the subject-matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for canceling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own independent judgment as to the value of the subject-matter, courts of equity should not and will not interfere with such valuation." 3 Pomeroy, Equity Jurisprudence (5th ed), 629, § 926.

The testimony here was that plaintiff was a man of wide business experience. He worked as an accountant for almost 10 years. He had accumulated a substantial amount of wealth. He was capable of making an informed, independent judgment on the terms of an exchange of properties, and he did.

The trial court and this court have heard and read testimony of so many competent and reputable appraisers and owners on the question of value which was at complete variance with the testimony of other competent and reputable appraisers that we hesitate to come to a decisive finding of value based upon opinion evidence. This is particularly so here where the plaintiff, a successful businessman, experienced in accounting, made a determination that it was advantageous to him to exchange his property and $7,500 for defendant's property. Admittedly, any successful and experienced businessman can make a foolish and unwise transaction, but it is our belief that very few of such transactions are made in which the discrepancy in what was received for what was given is so great as

to raise a strong inference that the businessman was swindled.

■■ As to the alleged misrepresentation of income, the testimony is conflicting. Mr. Martin says defendant made the misrepresentation or Mr. Phillips did in defendant's presence. Defendant specifically denies this. Mr. Phillips did not testify because he was in a California penal institution upon a felony conviction. This would cast doubt on Mr. Phillips' credibility, but not on Mrs. Good's. This was in equity and, therefore, the facts are tried de novo. However, "[i]n a case involving contradictory testimony the opinion of the trial judge who saw the witnesses and had an opportunity to appraise the value of their testimony at first hand, is entitled to great weight." *Larsen v. Lootens,* 102 Or 579, 597, 194 P 699, 203 P 621 (1922). We do not know specifically what the trial court found, but we are not going to reverse a decree by deciding one witness is to be believed and another witness is not to be believed unless because of peculiar circumstances we are convinced that the trial court's decision in this regard is clearly erroneous.

It is concluded that the charged inadequacy of consideration and the charged misrepresentation of income, singly, or in combination, have not been proved by clear and convincing evidence.

■ Plaintiff's other grounds for rescission concern Mr. Phillips' position and conduct. Plaintiff contends that Phillips owned a one-half interest in the Sequoia Motel and that if he had known Phillips had an interest in the property he would not have acquired it. Mrs. Good had the record title. Whatever interest Phillips had was equitable. Mrs. Good said it was a security interest because Phillips had financially assisted her in acquiring Sequoia. Mrs. Good testified she told plain-

tiff the whole story of Phillips' interest. Plaintiff flatly denied this. Again, we are asked to believe one witness and disbelieve another. Again, we conclude plaintiff has not proved this issue by the necessary quality of evidence.

■ Plaintiff asserts he is entitled to rescission because Phillips concealed the financial condition of Sequoia which violated the fiduciary duty of full disclosure Phillips owed as plaintiff's agent. The parties agreed that Phillips could act as agent for both. When there is a double agency one principal cannot charge the other principal by reason of the agent's breach of his agency obligation unless such breach was at the instigation of the other principal. *Swengel v. Bruun,* 136 Or 370, 374, 298 P 242, 299 P 332 (1931), involved slightly different facts than those here. However, it quoted with approval a statement from 2 Mechem, Agency (2d ed), 1717, § 2140, which is in point here:

> " 'Where two or more principals employ the same agent, whether as a means of dealing with one another or to protect their common interests, one cannot charge the other not actually at fault with the misconduct of the common agent. The latter owes no more duty to one than to the other; each of the principals is under an equal duty to supervise the agent and to protect his own interest, and there is no reason why the misconduct of the agent should be imputed to one principal rather than to the other.' "

■ The plaintiff does not challenge this principle of law. However, he asserts that defendant approved and ratified Phillips' conduct which was in breach of his agency for plaintiff. Plaintiff relies on defendant's general statements that as far as she knew Phillips did not do anything that did not have her approval,

was loyal to her in acting as her broker, and did nothing improper. This is not found to be any approval or ratification. Defendant is held not to be bound by any breach of the agency relationship that might have been committed by Phillips.

The decree is affirmed.