MERRILL, *Appellant,*
*v.*
ESTATE OF CHARLES BRUCE MERRILL,
Deceased et al, *Respondents.*

552 P2d 249

*Cecil H. Quesseth,* Salem, argued the cause and filed briefs for appellant.

*J. Philip Parks,* Salem, argued the cause for respon-

dents. With him on the brief were Rodney W. Miller of Miller, Beck & Sparks, Salem.

Before Denecke, Chief Justice, and O'Connell, Holman, and Bryson, Justices.

BRYSON, J.

## BRYSON, J.

This suit seeks to void a prenuptial agreement or, in the alternative, reformation of the agreement. The trial court found that plaintiff failed to establish the facts alleged in her complaint and failed to sustain the burden of proof as to both causes of suit. A decree was entered in favor of defendants and plaintiff appeals.

Plaintiff and decedent Charles Bruce Merrill were Salem, Oregon, residents and became acquainted with each other in August of 1973. They were married November 23, 1973, and decedent Merrill died January 28, 1974. Both plaintiff and decedent had children by prior marriages and each possessed substantial personal estates. At the time they considered marriage they each desired to keep their estates separate for their respective children. Accordingly, they began to discuss a prenuptial agreement when they first considered marriage.

Defendants, Max Merrill and Judith Louise Shuster, are the children of the deceased. Max Merrill practices law in Bend, Oregon.

In mid-October 1973 plaintiff and decedent consulted attorney Merrill regarding the preparation of a prenuptial agreement. Attorney Merrill asked the plaintiff if she wanted her own attorney to prepare the agreement but she declined and both parties agreed that Max Merrill would prepare the document. The prenuptial agreement was executed on November 21, 1973, two days before the wedding.

Plaintiff contends that she and decedent orally agreed, prior to receiving the prenuptial agreement for signature, "that she should be granted the decedent's house and four acres" adjoining the house; that plaintiff was induced to sign the prenuptial agreement by decedent's promise to sign a will leaving her the house and four acres.

Defendants contend that decedent Merrill considered executing a will giving plaintiff a life estate in

the house and four acres; that subsequently decedent considered giving the plaintiff the house and four acres outright by last will and testament. Such a will was prepared by Max Merrill and mailed to decedent in Salem but he did not execute it. In December of 1973 the decedent, by telephone, told Max Merrill that he was not going to sign the will. There is testimony that no discussion was had by the parties with Max Merrill regarding the will when he prepared the prenuptial agreement.

The unexecuted will was found at decedent Merrill's house in south Salem after his death. The executed prenuptial agreement was found at plaintiff's residence in west Salem where the couple was residing. A will signed and published by decedent on September 18, 1972, prior to his meeting plaintiff and leaving nothing to plaintiff, was admitted to probate in 1975.

 A valid prenuptial agreement concerning final disposition of property may be entered into between a man and woman intending marriage. If the marriage is consummated the agreement is binding upon the parties thereto, their heirs and legal representatives. ORS 108.140; *Taylor v. U.S. National Bank,* 248 Or 538, 436 P2d 256 (1968); *Moore v. Schermerhorn,* 210 Or 23, 307 P2d 483 (1957). The relationship between parties to a prenuptial agreement is fiduciary in character if entered into in contemplation of marriage. *Kosik v. George,* 253 Or 15, 22, 452 P2d 560 (1969). The validity of a prenuptial agreement and its execution must be interpreted with reference to its specific language and the facts surrounding its execution. *Taylor v. U.S. National Bank, supra* at 549.

 Plaintiff argues, as to her second cause of suit, that there is ample evidence to show that plaintiff executed the prenuptial agreement by mistake "due to the fraud of defendants." We have reviewed all of the evidence in this case and find there is no evidence of fraud on the part of the defendants or the deceased Merrill.

The evidence shows that both plaintiff and the deceased Merrill were experienced business people and each possessed substantial assets. In fact, the evidence shows that plaintiff was more experienced in the affairs of business than the deceased. Plaintiff was a licensed realtor in both California and Oregon, and engaged in business with her former husband. At the time plaintiff met decedent Merrill plaintiff was selling real estate and contemplated, with deceased, a subdivision of a portion of deceased's farm after their marriage. She had been involved in prior litigation and sought and received the aid of legal counsel. Plaintiff admitted to having assets in excess of $400,000. The deceased's assets were slightly more than half of this amount. The evidence shows that plaintiff was encouraged to seek other legal counsel regarding the agreement on two occasions, which she declined. Plaintiff testified:

"* * * Between the time you decided to get married and discussed pre-nuptial agreements, between that time and November 21st, you had ample opportunity to seek independent legal counsel, did you not?

"A Oh, I'm sure, yes."

It would add nothing to this opinion or the law of this state to recite all of the testimony adduced at trial. As usual there is some conflicting testimony. All of the pertinent testimony was given by plaintiff and defendant Max Merrill.

We realize that we review this equity case de novo, but in *Martin v. Good,* 234 Or 291, 296, 381 P2d 713 (1963), we stated:

"* * * We do not know specifically what the trial court found, but we are not going to reverse a decree by deciding one witness is to be believed and another witness is not to be believed unless because of peculiar circumstances we are convinced that the trial court's decision in this regard is clearly erroneous."

Plaintiff's assignment of error, reduced to its essence, simply urges us to accept plaintiff's evidence and disregard the defendants' evidence. Our review of the

evidence leads us to conclude that there are no peculiar circumstances that caused the trial court to reach an erroneous decision in this case. We conclude that the plaintiff failed to meet her burden of proof and did not prove the allegations in her complaint.

Affirmed. No costs or disbursements to either party.