Argued January 16, affirmed as modified February 13, reconsideration
denied March 29, petition for review denied June 13, 1978

In the Matter of the Marriage of
RAY, *Appellant,*
*and*
RAY, *Respondent.*
(No. E-19,913, CA 8955)
574 P2d 687

R. T. Gooding, La Grande, argued the cause for
appellant. With him on the brief was Gooding &
Susak, P.C., La Grande.

Robert W. Collins, Pendleton, argued the cause and
filed the brief for respondent.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

In this dissolution-of-marriage proceeding, wife appeals from the trial court's division of the marital assets.

Husband and wife, both aged 44, were married in 1954. Two children, now aged 4 and 17, were born to the marriage. The parties do not suffer from any health problems which affect either's ability to work.

Wife has been a public school teacher since 1954 and now earns a gross annual salary of $17,820. Wife has also done most of the housework during the marriage and has been the parent primarily responsible for rearing the children. Between 1954 and 1964, husband held a number of jobs ranging from pig farming on his mother's property to assembly line work and was periodically unemployed. Between 1964 and 1969, husband was employed as a property manager by his mother and earned an average gross annual income of $2,180. Since 1968, except for an interval of only a few weeks, husband was not employed apart from his work on the family farm.

In 1963 wife's mother inherited half interest in a 220-acre parcel of land in Umatilla County known as the Rogers tract. In 1964 she gave it to wife. In 1967 husband purchased in his own name the other half interest in the Rogers tract for $4,500. Thereafter, the parties commenced protracted but successful litigation to obtain a right-of-way to the land. Husband estimated the cost of obtaining the right-of-way at $13,950.

In 1964 the parties agreed to purchase from husband's mother a 1280-acre tract near the Rogers tract known as the Pfaffle Ranch. Husband's mother had purchased the Pfaffle Ranch for $80,000 in 1960. Husband and wife periodically lived at the ranch between 1960 and 1964. The sale of the Pfaffle Ranch to husband and wife was consummated in 1967, with the parties giving a $62,000 note to husband's mother

[ 529 ]

and agreeing to assume her $18,000 obligation on the existing purchase money contract on the ranch. There is no evidence in the record whether the $80,000 purchase price for the Pfaffle Ranch reflected the true market value of the property. In 1967 the parties borrowed $61,500 from the Federal Land Bank, using the Pfaffle Ranch as security. The loan was obtained to pay off the remaining obligation on the contract the parties assumed from husband's mother and to finance husband's purchase of the outstanding one-half interest in the Rogers tract.

In 1968 the parties used the remainder of the proceeds from the Land Bank loan as part of a down payment on a 3,228-acre tract adjoining the Pfaffle Ranch known as the Marbach tract.[1] The purchase price of the Marbach tract was $82,588.25. In 1972 the parties mortgaged that tract for $50,000 and used the proceeds of the loan to discharge their obligation on the existing contract.

These three tracts of land, the Rogers and Marbach tracts and the Pfaffle Ranch, totaling approximately 4,728 acres, are the principal assets of the parties. Since the purchase of the properties, their worth has apparently escalated phenomenally. We say apparently because, unlikely as it may seem, neither party presented any expert evidence on values.[2] The values we refer to are those placed on the respective tracts by the husband who estimated that the Rogers tract is worth between $50,000 and $94,000, the Pfaffle Ranch $502,750, and the Marbach tract $1,322,000. Husband arrived at these estimates by evaluating the worth of

---

[1]The Land Bank loan proceeds were not used directly for the down payment on the Marbach tract. Rather, the parties used the Land Bank loan proceeds to purchase a D-6 tractor which was in turn mortgaged to provide the sums for the down payment on the Marbach tract.

[2]Except for the issue of custody, only three people testified in the entire proceeding—husband, wife and husband's mother. Neither wife nor husband's mother gave any opinion as to the value of the real property, though wife did state in a deposition that the three parcels were worth between $450,000 and $550,000. Wife did not state how she arrived at these figures.

the properties as "opportunit[ies] for us, for our family." It is not apparent what husband meant by this phrase. Since we are dividing property rather than ordering payments, the accuracy of husband's valuations is not as important as their consistency. Apart from these properties, the only other major assets owned by the parties are a $50,000 D-6 tractor,[3] office equipment worth $10,000 and various items of personal property.

The parties, primarily husband, farmed the land on all three tracts between 1968 and 1971. Since 1971 the land has been leased to a neighboring farmer for $14,000 annually. This lease is scheduled to expire in 1979. The parties reported tax losses of $85,226.65 on all three tracts between 1964 and 1975. The Marbach tract and the Pfaffle Ranch both contain substantial amounts of marketable timber. In 1975 the parties entered into a "forest managment agreement" with a lumber company whereby the lumber company agreed to prepare a management plan for the timber on the parties' land in exchange for a right of first refusal when the timber could be logged. The management plan prepared by the lumber company estimated that the timber, situated primarily on the Marbach tract, would be worth $1,939,668.95 when logged over the next 45 years, with a return of approximately $150,000 in the next ten years.

The parties have also accumulated several liabilities. Apart from the two mortgages noted above totaling $111,500, the parties owe $16,481.34 on a note held by wife's mother. In addition, husband's mother has advanced money to the parties throughout the marriage. Husband's mother testified that these

---

[3]Husband's testimony conflicts as to whether the parties in fact own the tractor. At one point husband testified that they had title to the tractor; at another point he testified that an equipment rental company had title to the tractor and that husband and wife were only leasing the tractor. In light of husband's further testimony that title to the tractor rested with the equipment company only to reduce tax liabilities, we conclude, as did the trial court, that the parties in fact own the tractor.

advances, which total $159,658.41, were loans. Only $62,000 of this "indebtedness" is evidenced by a note — the note secured by the Pfaffle Ranch — and the only evidence of any other advances are notations in a ledger maintained by husband's mother.

The trial court's decree granted custody of the two children to wife and ordered husband to pay $200 child support per month per child. Wife did not request and the court made no provision for spousal support. The court awarded wife the Rogers tract, and husband the balance of the property. The court ordered wife to assume half of the liability on the note held by her mother and required husband to assume all remaining obligations of the parties. Using husband's valuations of the properties, and assuming that all of the claimed obligations to his mother are real, we estimate that the trial court's decree awarded husband assets with a net worth of $1,605,351 and wife assets with a net worth of $85,759. Wife appeals from this division of the marital assets.

I

ORS 107.105(1)(e) provides that a court may provide for such division of the marital assets as may be "just and proper in all the circumstances." Though each case must turn on its own facts, *see Demke and Demke,* 23 Or App 403, 405, 542 P2d 493 (1975), it has been the general policy of this court in dealing with marriages of substantial duration such as this to divide the marital assets in such a fashion as to put the parties in a position financially, in so far as is possible, that they would have been in had the marriage not been dissolved. *Slauson and Slauson,* 29 Or App 177, 184, 562 P2d 604 (1977). Often the application of this principle will yield an approximately equal division of the marital assets, *see Wirthlin and Wirthlin,* 19 Or App 256, 259, 527 P2d 147 (1974), though such factors as the source of the marital assets, *Stevens and Stevens,* 24 Or App 939, 944, 547 P2d 639, *rev den* (1976), the health of the parties, *Hammond and*

*Hammond,* 23 Or App 739, 740-41, 543 P2d 1076 (1975), the level of spousal support, *Carter and Carter,* 29 Or App 605, 608, 564 P2d 1076 (1977), and other considerations may require an unequal division of the marital assets.

■ Here it is undisputed that over the course of the marriage wife provided the financial support for the family in addition to caring for the children and performing domestic chores. Husband, on the other hand, contributed little in the way of wages over the course of the marriage but has been primarily responsible for the acquisition and development of the properties of the parties. Thus both husband and wife contributed in substantial yet distinct fashions to the parties' economic well-being. Under these circumstances we believe it proper to award wife a larger share of the marital assets than did the trial court.

Accordingly, we hold that the trial court's decree should be modfed to add to the wife's share of the marital assets an undivided half interest in the Marbach tract. Wife should assume one-half the liability on the mortgage on the Marbach tract. Since the Forest Management Plan concerns primarily the Marbach tract, both parties should share equally in the rights and responsibilities under the plan as it concerns the Marbach tract. Husband alone should be responsible for the obligations under the plan as it concerns the Pfaffle Ranch. In addition, husband should assume all rights and responsibilities under the existing lease of the properties to the neighboring farmer. Husband should be responsible for whatever indebtedness is actually owed by the parties to his mother. As it appears to us that most of what husband's mother contends were loans were in fact gifts, husband's obligation in this regard may not be substantial.

Using husband's valuations of both assets and liabilities, the modification we here direct will result in a division of the marital assets as follows: (see following page)

[ 533 ]

**TO HUSBAND:**

| | |
|---|---:|
| Pfaffle Ranch | $502,750 |
| ½ interest in Marbach tract | 661,000 |
| Office equipment | 10,000 |
| Tractor | 50,000 |
| ½ liability on note to wife's mother | (8,241) |
| Mortgage on Pfaffle Ranch | (61,500) |
| ½ liability on mortgage on Marbach tract | (25,000) |
| Indebtedness to husband's mother | (159,658) |
| NET VALUE | $969,351 |

**TO WIFE:**

| | |
|---|---:|
| Rogers tract | $ 94,000 |
| ½ interest in Marbach tract | 661,000 |
| ½ liability on note to wife's mother | (8,241) |
| ½ liability on mortgage on Marbach tract | (25,000) |
| | $721,759 |

[ 534 ]

■ Usually we have sought to disentangle the financial affairs of the parties in a dissolution proceeding and, applying this principle, we have in the past eliminated a provision in a dissolution decree that the parties remain as tenants in common of the family home. *Rislove and Rislove,* 31 Or App 305, 307, 570 P2d 403 (1977). *See also, Slauson and Slauson,* supra at 183-84. The record in this case is not such that we can decree a physical division of the Marbach tract into two tracts with any assurance of equity. In any event, the Marbach tract consists of undeveloped timber and farm land, and it is unlikely that the financial affairs of the parties will become entangled due to the nature of the property. In addition, once each party has obtained an undivided one-half interest in the Marbach tract, either has the option of bringing a suit for partition pursuant to ORS 105.205.[4]

## II

Shortly after the petition in this case was filed, husband purported to "convey" the parties' properties to wife. The reasons for this "conveyance" are not readily apparent. One month after this "conveyance," husband "conveyed" the parties' properties to his mother.[5] Husband's mother recorded the deeds given her by husband; wife did not. The trial court's decree ordered husband to hold wife harmless for any claims his mother might assert to the Rogers tract. That

---

[4]ORS 105.205 provides:

"When several persons hold real property as tenants in common * * * any one or more of them may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale of all or part of the property if it appears that a partition cannot be had without great prejudice to the owner."

[5]Husband attempted to convey both parties' interest in the properties, not just his interest. He testified that he did so not to transfer beneficial ownership to his mother, but only to give her security for the money allegedly owed her. Husband's mother did not claim ownership interest in the properties at the hearing. The whole thrust of her testimony, except on the issue of child custody, was that all of the sums she advanced to the parties during the marriage were loans, repayment of which she wanted assured by some means.

provision should be expanded to include the wife's interest in the Marbach tract.

Affirmed as modified. Costs to appellant.