Argued June 22, affirmed August 8, 1978

# In the Matter of the Marriage of
## COWARD, *Appellant,*
### *and*
## COWARD, *Respondent.*
### (No. 77-1039-E-2, CA 10063)
#### 582 P2d 834

Alan B. Holmes, Medford, argued the cause for appellant. With him on the brief was Holmes & James, Medford.

Manville M. Heisel, Medford, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Lee and Joseph, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Wife appeals the portion of a decree of dissolution which awarded to husband the family residence pursuant to an antenuptial agreement. Wife further contends the court erred in distribution of certain personal property and in denying her attorney fees.

This was the second marriage for husband and the third for wife. She had the custody of three minor children by a previous marriage. Husband owned the residence prior to the parties' marriage in 1966. He testified that he desired a prenuptial agreement because he feared losing the home in the event of a subsequent dissolution of the marriage. As a result, he discussed the subject of such an agreement with wife some time prior to their engagement. She initially did not favor such an agreement but subsequently consented to the arrangement. After their engagement husband had his attorney draw up the agreement, which was signed by the parties in the attorney's office seventeen days before the wedding. The attorney advised wife she should consult her own counsel prior to signing the agreement. She declined to do so.

Wife had, prior to the marriage, assisted husband with his financial affairs. She was aware of the property he owned and its value. She worked in an office performing clerical duties and bookkeeping. The trial court found she was an experienced businesswoman.

Following the marriage the parties executed a mortgage on the property to secure a loan of $15,000. The proceeds were used to pay off a preexisting mortgage and to remodel the residence.

The prenuptial agreement provided that the wife relinquished any right of dower and waived any interest whatsoever in the husband's real property. The agreement further provided:

"* * * and it is mutually agreed between the parties that all of the properties of any name or nature, real,

[ 679 ]

personal or mixed, wherever they may be found, belonging to the Party of the First Part [husband], before marriage, shall be and remain forever his personal estate, and that this shall include all interest, rents and profits which may in time accrue, or result in any manner from increase in value, or be collected for the use of the same in any way."

Wife advances two essential contentions regarding the agreement. She first argues the agreement is void because; (1) she was not afforded an opportunity to consult her own counsel, (2) that husband did not fully explain the effects of the agreement and (3) that by execution of the mortgage, in which wife became personally obligated, husband should be estopped from denying her an interest in the increase in value during the marriage.

In *Bauer v. Bauer,* 1 Or App 504, 464 P2d 710 (1970), we noted that although prenuptial agreements are favored (ORS 108.140), the relationship between the parties is fiduciary in character if the agreement were entered into after they became engaged to be married. *Kosik v. George,* 253 Or 15, 452 P2d 560 (1969); *Moore v. Schermerhorn,* 210 Or 23, 307 P2d 483, 308 P2d 180, 65 ALR2d 715 (1957). We stated:

"* * * This relationship requires the utmost good faith and a full and frank disclosure of all circumstances materially bearing on the contemplated agreement, generally including full disclosure of assets." 1 Or App at 507.

The trial court, having an opportunity to view the parties and hear their testimony, concluded that the wife was experienced in the business world and fully aware of the intent of the agreement. Wife had an opportunity to consult counsel and received advice from husband's attorney to do so. The agreement had been discussed by the parties prior to their engagement. She was fully aware of the the property owned by husband and its value. We conclude, as did the trial court, the agreement was valid. *See McFerron v. Trask,* 3 Or App 111, 472 P2d 847 (1970).

Wife's second contention is that the agreement is ambiguous and should be interpreted to limit husband's claim to the value of the property as it existed prior to the marriage. She contends that any increase in value during the marriage should be divided equally. The portion of the agreement quoted above is unambiguous respecting husband's entitlement. It provides that he is to retain the property and any increase in value which results in any manner. ORS 108.140 provides a prenuptial agreement is binding on the parties and, consequently, it must be enforced by the court according to its terms. We concur with the trial court's interpretation of the agreement and the award of the residence to the husband.

Wife additionally contends that execution of the mortgage, upon which she became personally liable, constituted a recognition by husband of her interest in the property to the extent it increased in value during the marriage. The agreement specifically provided that wife would execute any necessary documents respecting the property, including a mortgage. The mortgage was thus executed pursuant to the agreement, and not in derogation of it, and husband's rights are not affected by execution of the mortgage. The mortgage loan facilitated an increase in value of the property which, by prenuptial agreement, is retained by the husband.

Wife also contests the award of some musical instruments valued at approximately $3,400 to husband. She asserts she should have been awarded one-half of this value. Husband had a number of musical instruments prior to the marriage. He subsequently acquired other instruments by trade or purchase. Considering the entire property division, apart from the residence, we conclude it was equitable.

We concur in the court's denial of attorney fees. Wife, at the time of the dissolution, was employed at a salary of approximately $1,200 per month. Her children were emancipated and she no longer provided

their support. She retained a savings account and two $1,000 time deposit certificates by the decree. She was financially capable of providing her own counsel.

Affirmed. No costs to either party.