Argued and submitted December 15, 1980,
affirmed as modified March 2,
reconsideration denied May 21,
petition for review denied June 23, 1981 (291 Or 151)

In the Matter of the Marriage of

## NORRIS,

*Appellant - Cross-Respondent,*
*and*

## NORRIS,

*Respondent - Cross-Appellant.*

(No. 111,284, CA 18214)

624 P2d 636

Paul J. De Muniz, Salem, argued the cause for appellant - cross-respondent. With him on the briefs was Garrett, Seideman, Hemann, Robertson & De Muniz, P. C., Salem.

J. Ray Rhoten, Salem, argued the cause for respondent - cross-appellant. With him on the brief were David A. Rhoten and Rhoten, Rhoten & Speerstra, Salem.

Before Gillette, Presiding Judge, and Roberts, Judge, and Campbell, Judge Pro Tempore.

GILLETTE, P. J.

### GILLETTE, P. J.

Wife appeals from those portions of a decree of dissolution of marriage concerning her share of the property settlement and the amount of permanent spousal support payments. Husband cross-appeals from the trial court's finding that a pre-nuptial agreement between the parties was invalid, as well as the court's refusal to admit certain additional evidence concerning that agreement after the close of trial. We modify the amount of the judgment awarded to wife as her share of the property, but otherwise affirm.

Husband, 68 years old, and wife, 63 years old, have been married for 14 years. Husband was married once before and wife had been married four times previously. The parties met in April, 1965, through a computer dating service. A month later, and after three or four meetings they decided to marry.

At the time of the marriage, the husband was the major stockholder in a paint and varnish company which he started in 1946. Husband represented his share in the company as being worth $468,000 at the time of the marriage in 1965. Husband also owned a five bedroom house worth from $28,000-$30,000, and various other assets. The trial court found that the total value of the husband's holdings at or near the time of marriage was $750,000. Wife, a schoolteacher at the time of the parties' marriage, brought assets of little appreciable value to the marriage except a life estate in a piece of property. She valued her assets at $9,500 to $10,000 at the time.

During the course of the marriage wife stayed at home and performed the role of homemaker, while husband continued to operate the paint store. Wife took no part in the business affairs. The parties traveled a great deal on combined business-pleasure trips both throughout the United States and abroad. In 1979 wife became ill and had to enter a hospital. Since that time, she has lived near her daughter from a previous marriage, who looks after her needs. Wife has severe emphysema and chronic bronchitis. According to her doctor, her physical activity is severely limited and she requires help with even minor chores. It is

possible that she will need extended care or hospitalization in the future. Her physician estimated that her chance of surviving the next five years is less than 15 percent.

The trial court found that during the marriage the parties accumulated net assets with a value of $711,000. This figure represents property holdings acquired by the parties during the marital period, various other assets jointly or separately held and the net growth or increase during the marriage in husband's previously owned assets. It does not include the value of the roughly $750,000 in assets which husband brought to the marriage. The trial court awarded wife 25 percent of the accumulated assets for a total award of $178,000. She received $51,000 in separate liquid assets, for the most part given to her by husband during the marriage, and a lump sum judgment of $127,000, $27,000 of which is to be paid initially, with the remaining $100,000 to be paid in installments of $25,000 per year for the next four years. Wife was also awarded $1,500 per month in permanent spousal support. Husband was awarded his business assets and the parties' jointly held assets.

On appeal the parties do not dispute the value assigned to their assets. Wife contends that she should be awarded half the value of the accumulated assets. She also requests spousal support payments of $2,225.72 a month. Husband argues that the judgment given to wife should be reduced from $127,000 to $100,000. Alternatively he argues that, because of the pre-nuptial agreement, wife is not entitled to any of husband's separate assets.

We turn first to an examination of the pre-nuptial agreement. That agreement, dated May 29, 1965, the day the parties were married, provides that each of the parties releases all claims against the other party's property owned at the time of marriage or acquired thereafter, including rights of dower, curtesy, homestead, support or alimony, attorney's fees, court costs and all other rights available to an individual as a party to an agreement to marry, a spouse or a surviving spouse. It provides further that each party is free to manage, sell or otherwise deal with any separate assets owned at the time of marriage or subsequently acquired.

The circumstances surrounding the pre-nuptial agreement are in dispute. As noted previously, the parties had three or four meetings before deciding to marry. During one of their meetings wife visited husband in Salem and was shown his home and the location of his manufacturing plant. She told husband she did not want to work after the marriage, and he told her she would not have to as he was in an "upper income bracket." Wife stated that she was aware that husband owned a new house, a car and the paint business, but that she did not know about any other interests or the value or extent of husband's assets. Husband testified that he told wife that he owned the largest share of the company stock and that it was worth $100,000. He admitted telling her that she did not have to work and that she would be taken care of.

The parties were married in Reno about one month after having met. Wife testified that after the parties arrived in Reno they checked into a motel. As they were preparing to go to the courthouse to obtain a license, husband presented her with the pre-nuptial agreement. Wife stated that this was the first time she had seen the agreement, and she was "floored" when husband presented it. She asked him what it was and he said that "what is yours is yours and what is mine is mine and after we are married what we acquire is ours." Wife testified that she was unsure about what to do and felt husband would not marry her if she did not sign it. She signed the agreement in the motel room and then the couple walked over to the courthouse, where husband signed it and had it notarized. The couple was married shortly thereafter.

Husband testified that they discussed the fact that a pre-nuptial agreement would be required very early in their relationship. He stated that wife was shown the agreement during the drive to Reno. According to husband, they both signed the agreement in the courthouse before the notary. The agreement was prepared by husband's attorney. On appeal husband contends that wife was aware of the nature and value of husband's assets. She knew he was the Norris of Norris Paint & Varnish Company and that he was a man of means. She was also aware of his concern about losing his assets after a prior divorce. He

contends further that she was aware of the rights and claims she was giving up. He points to the fact that wife has a college education and had been through four previous divorces.

In his memorandum opinion, which was incorporated in his final order, the trial judge found the prenuptial agreement to be invalid. He stated:

"There are various circumstances that lead me to the conclusion that the antenuptial agreement is invalid. There is an admittedly disproportionate provision for the wife. There is a waiver of support or alimony despite a mutual understanding that respondent was to support and care for the petitioner. There are also the circumstances and timing of the presentation and execution of the agreement on the wedding trip and the fact that petitioner had no opportunity to seek legal counsel. Petitioner had a lack of full understanding of the respondent's financial holdings and resources. For all of these reasons, the antenuptial agreement cannot be enforced as such."

■    Pre-nuptial agreements concerning the disposition of their property between a man and woman contemplating marriage are valid in Oregon. ORS 108.140; *Merrill v. Merrill,* 275 Or 653, 656, 552 P2d 249 (1976). The validity of an agreement will depend upon the circumstances of the particular case. *Ibid.* If the parties are contemplating marriage, as in the case before us, the relationship between them is fiduciary in character. *Ibid; see also Kosik v. George,* 253 Or 15, 22 452 P2d 560 (1969). As we stated in *Bauer v. Bauer,* 1 Or App 504, 507-508, 464 P2d 710 (1970):

"This relationship requires the utmost good faith and a full and frank disclosure of all circumstances materially bearing on the contemplated agreement, generally including full disclosure of assets:

'The exercise of good faith necessitates disclosure by the prospective husband of all material facts relating to the amount, character and value of his property, so that the prospective wife may have sufficient knowledge on which to base her decision to enter into the agreement.' 2 Lindey, Separation Agreements and Ante-Nuptial Contracts 90-43, § 90 (1967) and many cases cited thereunder.

"Good faith accords to plaintiff a reasonable opportunity to learn what property rights she would have as his wife.

*Kosik v. George, supra.* Here the defendant did not inform the plaintiff anything about his assets nor does he claim she had any particular knowledge thereof. Not only that, but it was not until the parties were on the way to be married that he told her of the proposed agreement. She was under the type of pressure and implied coercion which is inconsistent with good faith on the part of her intended husband." *See also Coward and Coward,* 35 Or App 677, 582 P2d 834 (1978).

In this case, husband admits that the outcome of the agreement would be disproportionate. The parties dispute the extent of the wife's awareness of husband's assets and when the agreement was presented to her. The trial court apparently believed the wife. In a similar case, the Supreme Court stated that:

"We realize that we review this equity case de novo, but in *Martin v. Good,* 234 Or 291, 296, 381 P2d 713 (1963), we stated:

'* * * We do not know specifically what the trial court found, but we are not going to reverse a decree by deciding one witness is to be believed and another witness is not to be believed unless because of peculiar circumstances we are convinced that the trial court's decision in this regard is clearly erroneous.'

"Plaintiff's assignment of error, reduced to its essence, simply urges us to accept plaintiff's evidence and disregard the defendants' evidence. Our review of the evidence leads us to conclude that there are no peculiar circumstances that caused the trial court to reach an erroneous decision in this case." *Merrill v. Merrill, supra,* 275 Or at 657-658; *see also Prosch and Prosch,* 24 Or App 359, 545 P2d 606 (1976), *rev den* (1976).

In this case husband would have us accept his account of the facts rather than his wife's. The trial court found otherwise. We find no circumstances in the record that would justify our finding that the trial court's decision was incorrect.

■      This case is not unlike other cases in which prenuptial agreements have been invalidated. The agreement was prepared by husband's attorney and wife did not have an opportunity to consult legal counsel. Wife was not made aware of the agreement until the couple was already in Reno and about to be married. Finally, according to the

wife, she was not fully aware of the nature and value of husband's assets; thus, she did not have a sufficient basis upon which to make an informed decision to sign the agreement. *See Kosik v. George, supra; Bauer v. Bauer, supra.* The trial court's decision in this regard is affirmed.

We turn now to the question of how the parties' assets should be divided. The trial court awarded the wife 25 percent of the assets accumulated by the parties during the 14 year marital period. It did not award to her any part of the husband's assets which he brought to the marriage. Wife argues that a "just and proper" division of property would be to award her half the value of the assets accumulated during the marriage. Husband contends that the judgment she was awarded against him should be reduced to $100,000. He notes that she provided no financial support to the marriage, that all of the marital property can be attributed to the husband and that a large award would be tantamount to establishing a legacy to be inherited by wife's daughter from a previous marriage upon wife's death.

The trial court awarded the husband a greater share of the parties' assets acquired during the marriage because of husband's prior business acquistions and the fact that the growth and accumulation of the assets was due primarily to his efforts and abilities. The court also noted the parties' ages and histories, and length of the marriage, and took the existence of the pre-nuptial agreement into account insofar as it served to make wife aware that husband wanted to keep his own assets and not lose a substantial portion of them as he had previously upon being divorced. The court found that wife wanted and expected only comfort, support and security without the necessity of working.

The court in a dissolution proceeding is to make a division of property that is "just and proper in all the circumstances." ORS 107.105(1)(e). In *Frishkoff and Frishkoff,* 45 Or App 1033, 1040, 610 P2d 831 (1980), we stated that the relevant factors for consideration are:

> " 'The financial condition of the parties; the nature and value of their respective properties; the contribution of each to any property held by them as tenants by the

entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health, and ability to labor; and the wife's age, health, station and ability to earn a living.' *Nolan v. Nolan,* 20 Or App 432, 435, 532 P2d 35 (1975); quoting *Stettler v. Stettler,* 2 Or App 119, 121, 467 P2d 130 (1970)."

ORS 107.105(1)(e) directs us further to consider the contribution of a spouse as a homemaker in the contribution of marital assets.

■ This case does not involve a marriage of short duration. *See Nolan and Nolan,* (4 years) 20 Or App 432, 532 P2d 35 (1975), *rev den* (1975); *York and York,* (2 years) 30 Or App 937, 569 P2d 32 (1977). Neither is the marriage of very long duration. *See Glatt and Glatt,* (28 years) 41 Or App 615, 598 P2d 1237 (1979); *Ray and Ray,* (24 years) 32 Or App 527, 574 P2d 687 (1978), *rev den* 282 Or 537 (1978). However, it is a marriage that has lasted a significant period of time, and our goal should be to put

> "* * * the parting spouses in the same economic position they would enjoy had there been no dissolution, insofar as circumstances and other equitable considerations permit."
> *Frishkoff and Frishkoff, supra,* 45 Or App at 1041, and cases cited therein.

■ We conclude that an equitable division of property in this case would be to divide the assets accumulated during the marriage equally. While the husband's efforts were chiefly responsible for the parties' accumulation of wealth, wife's contribution as a homemaker and the fact that she gave up her profession to marry must be considered as well. Further, the wife, who is in her 60's, is in poor health, will not be able to earn a living in the future and will need medical attention and help in caring for herself. This division takes into account the source of the property: the value of the assets husband brought to the marriage were excluded from the trial court's division and wife does not claim a share in these assets. *See Frishkoff and Frishkoff, supra,* 45 Or App at 1040.

■ Wife has requested $350,000 as her share of the parties' assets. This is approximately half of the $711,000 the trial court found as the value of the assets accumulated during the marriage. Neither party disputes this value;

thus, we see no reason to examine the parties' assets in detail. The trial court's order shall be modified to provide for a judgment of $299,000 ($350,000 less the $51,000 awarded to her in assets) in the wife's favor and against husband. The amount and duration of annual installment payments must be recalculated to account for this increased award. We do so *post.* The interest rate shall remain the same at 9 percent per annum.

Wife also contends that she should be awarded $2,225.72 a month in permanent spousal support. She receives social security and pension benefits in the amount of $309.28 a month; she represents her expenses as $2,535 a month. She presently lives in a mobile home she rents from her daughter and son-in-law for $200 a month. In addition she pays them $150 for assisting her with her daily chores and needs. She includes $192 for a cleaning woman as she is unable to do her own housework. Her medical expenses are estimated to be $250 a month. She indicates that, were she to need constant private nursing or live-in care, as she might in the future, her expenses would be approximately $1,800 more than the $2,535 figure.

We conclude that the $1,500 award, while not fully meeting wife's expenses, is adequate under the circumstances. We have awarded wife a significant judgment against the husband. She will be receiving this money, together with interest, over the next few years. Spousal support payments are not to be viewed in isolation, but are to be considered in light of other provisions of the dissolution decree. *Grove and Grove,* 280 Or 341, 571 P2d 477 (1977), *modified* 280 Or 769, 572 P2d 1320 (1977); *Frishkoff and Frishkoff, supra,* 45 Or App at 1045. If wife's medical situation becomes such that she requires hospitalization or constant care and her medical insurance does not meet this increased need, she may request the court to modify the amount of support.

The trial court's decree is modified in the following respects: Wife is awarded as her share of the marital assets the sum of $350,000, payable as follows:

(a) The sum of $51,000 in assets presently in wife's possession;

(b)  Judgment against husband in the sum of $299,000, which shall be payable as follows:

(1)  $27,000 shall be payable forthwith;

(2)  The balance of $272,000 shall be payable in eleven annual installments, each save the last of which shall consist of not less than $25,000 per year, with each annual payment due on or before the first day of June of each year, beginning on June 1, 1981; and

(3)  Deferred balances on the aforementioned judgment shall bear interest at the rate of 9 percent per annum from the date of the decree and be payable quarterly on the 1st day of September, December, March and June of each year.

In all other respects the trial court's decree is affirmed.[1]

Affirmed as modified. No costs to either party.

---

[1] In his cross-appeal, husband assigns as error the failure of the trial court to admit certain evidence after the close of the trial. The evidence in question relates to the pre-nuptial agreement. There is no record of husband's motion or the trial court's denial of his motion. Husband also fails to point out why the evidence could not be introduced at the trial itself. On that basis we decline to consider the matter.