Argued and submitted September 11, affirmed November 19, 1986

In the Matter of the Estate of
Donald Harry Simmons, Deceased.

**SIMMONS,**
*Appellant,*

*v.*

**SIMMONS et al,**
*Respondents.*

(8503-90546; CA A36906)

728 P2d 921

Ferris F. Boothe, Portland, argued the cause and filed the briefs for appellant.

Robert B. Smith, Portland, argued the cause for respondents. With him on the brief were Smith & Davis, and Gregory G. Moore, Portland.

Before Joseph, Chief Judge, and Richardson* and Deits, Judges.

DEITS, J.

---

* Richardson, J., *vice* Newman, J.

## DEITS, J.

Appellant appeals from a judgment denying her claim to an elective share of her deceased husband's estate, ORS 114.105, and her petition for support during administration of the estate. ORS 114.025. We affirm.

Four days before her marriage in October, 1981, appellant signed a pre-nuptial agreement which stated, in pertinent part:

> "NOW THEREFORE, it is mutually agreed by the parties that all of their interests in any separate property now owned by them before their marriage of whatever kind and nature, personal, real or mixed, shall remain the separate property and estate of each, free of anyh [*sic*] right, claim or interest of the other during the joint life of the parties hereto or thereafter and for the purposes of this agreement the parties hereto agree that their separate property shall be identified as such by being held in the separate name of the husband or wife, as the case may be, and not jointly or as tenants in common or as tenants by the entirety.

> "* * * * *

> "It is understood and agreed that husband and wife shall have complete control and ownership of their respective interests in their individual or separate property and that each may dispose of such property by sale, gift, devise, bequest, or in any other manner as if they were unmarried.

> "Each party to this agreement agrees to execute, acknowledge and deliver whatever additional instruments may be required or necessary to accomplish the intention of this agreement. It is expressly understood that this agreement will bar the surviving party from any elective share under the provisions of ORS 114.105 pursuant to ORS 114.115."

The trial court found that the agreement is valid and that it precludes all of appellant's claims. Appellant argues that, because of the circumstances surrounding the signing of the agreement, it should be found invalid. *See Norris v. Norris,* 51 Or App 43, 48, 624 P2d 636, *rev den* 291 Or 151 (1981).

The circumstances surrounding the signing of the pre-nuptial agreement are in dispute. Appellant testified that the first time that she became aware of the agreement was on October 5, 1981, just before a party four days before her

wedding. According to appellant, her future husband's attorney showed up with the agreement and told her that it needed to be signed. She testified she was in a rush trying to get ready for the party and signed the document a few minutes after the attorney handed it to her. Appellant acknowledged that she later received a copy of the document but said that she filed and forgot about it and did not subsequently question the agreement until reviewing it with an attorney in 1985, three weeks before her husband's death.

The testimony of husband's attorney was directly contrary to that of appellant. Husband's attorney, who prepared the agreement, testified that he had met with appellant and the deceased on or before October 1, 1981, and had explained the consequences of the agreement. He testified that he had mailed a copy of the agreement to appellant four days before she signed it, along with a cover letter urging her to seek independent counsel. A copy of the letter, which wife denied receiving, was admitted.[1]

■　　　Pre-nuptial agreements concerning the disposition of property are permitted in Oregon. *See Merrill v. Merrill,* 275 Or 653, 552 P2d 249 (1976). In this case, the trial court apparently accepted the estate's version of the facts and held the agreement valid. In *Merrill,* a case very similar to this one, the Supreme Court stated:

> " '* * * We do not know specifically what the trial court found, but we are not going to reverse a decree by deciding one witness is to be believed and another witness is not to be believed unless because of peculiar circumstances we are convinced that the trial court's decision in this regard is clearly erroneous.'
>
> "Plaintiff's assignment of error, reduced to its essence, simply urges us to accept plaintiff's evidence and disregard the defendants' evidence. Our review of the evidence leads us to conclude that there are no peculiar circumstances that caused the trial court to reach an erroneous decision in this case." 275 Or at 657. (Citation omitted.)

---

[1] Appellant also argues that the deceased's assets were not disclosed. We are not convinced that appellant did not understand the extent of deceased's estate. *See Knoll and Knoll,* 65 Or App 484, 488, 671 P2d 718 (1983). She had lived with the deceased in his home for more than three months before the marriage. The estate had no "secret" assets, but consisted primarily of the home and personal belongings.

On *de novo* review we find no circumstances in the record justifying a conclusion that the trial court was incorrect in upholding the validity of the agreement.

Appellant argues that, even if the agreement is valid, she is entitled to support as provided in ORS 114.015, which states:

> "The court by order shall make necessary and reasonable provision from the estate of a decedent for the support of the spouse and dependent children of the decedent * * *."

In *Taylor v. U.S. National Bank,* 248 Or 538, 436 P2d 256 (1968), the Supreme Court upheld a pre-nuptial agreement in which the widow had waived her rights to support under *former* ORS 133.070,[2] the predecessor to ORS 114.015. The court analyzed the language of the agreement in which the widow relinquished any "claim" to the husband's property, as appellant has here. The court found that the term "claim" covered not only giving up the right to inherit, but also the right to support. Appellant asserts that this case is not controlled by *Taylor,* because that decision predates the 1969 revision of the Oregon Probate Code. She argues that no waiver is possible, because no specific statute allows relinquishing support rights, although ORS 114.115[3] specifically allows a waiver of election.

■ We do not find appellant's argument persuasive. Express authority to waive spousal support is not required. In upholding the waiver of spousal support, *Taylor* relied in part on *Moore v. Schermerhorn,* 210 Or 23, 307 P2d 483, 308 P2d 180 (1957), where the Supreme Court upheld a waiver made in a pre-nuptial agreement of the widower's statutory right to homestead and exempt property.[4] *Moore* held that there was

---

[2] *Former* ORS 113.070 provided:

"A widow may remain in the dwelling house of her husband one year after his death without being chargeable with rent therefor, and shall have her reasonable sustenance out of the estate for one year."

[3] ORS 114.115 provides:

"The right of the surviving spouse to elect under ORS 114.105 may be barred by the terms of a written agreement signed by both spouses. The agreement may be entered into before or after marriage."

[4] *Former* ORS 116.010 provided:

"Upon the filing of the inventory the court or judge thereof shall make an

no public policy adverse to waiver. In enacting subsequent legislation, the legislature is considered to be aware of court decisions. *See State v. Clevenger,* 297 Or 234, 683 P2d 1360 (1984). If the legislature disagreed that waiver of spousal support was not possible, it was free so to provide in the probate revisions. It did not do so. *See State v. Clevenger, supra,* 297 Or at 245.

The language of the agreement here is comprehensive and constitutes a waiver of appellant's statutory claim to support. She agreed that the separate property of the parties would "remain the separate property and estate of each, free of anyh [*sic*] right, *claim* or interest of the other during the joint life of the parties hereto or *thereafter* * * *." (Emphasis supplied.) The language is almost identical to that upheld in *Moore.*

Affirmed.

---

order setting apart for the widow, widower or minor children of the deceased, if any, all the property of the estate exempt from execution, according to exemption laws in effect as of date of death of deceased. The property thus set apart is the property of such widow or widower to be used or expended by her or him in the maintenance of herself or himself and minor children, if any. If there is no widow or widower, it is the property of the minor child; or if more than one child, then of the minor children in equal shares, to be·used or expended in the nurture and education of such child or children by the guardian thereof, as the law directs."